612 So.2d 376 (1992)
Truman LINDSEY
v.
Mary Lou LINDSEY.
No. 90 CA-0772.
Supreme Court of Mississippi.
December 31, 1992.
Rehearing Denied February 18, 1993.
Ronald D. Michael, Langston Langston Michael & Bowen, Booneville, for appellant.
Charles R. Brett, Tupelo, for appellee.
Before HAWKINS, P.J., and PITTMAN and BANKS, JJ.
BANKS, Justice, for the Court:
Here, we review a chancellor's division of marital property. A primary issue is the disposition of the husband's interest in the marital home. The chancellor found that the husband owned one-half of the property, but proceeded to impose upon that interest an equitable lien in the approximate amount of its market value.

I
On August 16, 1963, Mary Lou Lindsey (Mary) and Truman Lindsey (Truman) were wed. To the union were born two sons, Rodney Dale Lindsey and Bradley Warren Lindsey, whose dates of birth are May 14, 1965, and May 11, 1969, respectively. The couple lived as husband and wife until separating August 11, 1988. On September 7, 1988, Mary Lou filed a "Complaint for Divorce" on the alternate grounds of adultery, habitual, cruel and inhuman treatment or irreconcilable differences. The action was contested.
A final judgment granting divorce was entered March 7, 1989. The court awarded the requested relief on the ground of adultery and ordered that Truman pay child support to the minor child, in the amount of *377 fifty dollars per week. The matter of permanent property settlement was deferred until further order of the court. During the interim, Mary was given temporary use of the home, household furnishings, lawn-mower, tractor and bushog.
After hearing on the ownership of the real and personal property, the court entered its opinion on the issue of property settlement and distribution between the parties. It found that the home in which the parties resided prior to separation and divorce was jointly owned, even though Mary claimed that the property was hers, solely. The court found that Mary Lou voluntarily, during the marriage, deeded to Truman a one-half interest in the home. However, the court found that Mary Lou "made most of the contributions to the improvement or even the building of the home and the buying of the property." Thus, the court opined that Mary
had not only a one-half undivided interest, but an equitable lien in the interest of her former husband, Truman W. Lindsey, arising out of all the improvements, work and money she spend on the house. The lien on his half interest will be $22,305.65, which is a lien which is to be levied against his half interest when the house is sold.
The court also divided the remaining personal property which had not been distributed or agreed to previously by the parties. A Decree in accordance with the opinion was entered on July 9, 1990.
Feeling aggrieved by the decision below, both parties appeal to this Court seeking dispositions favorable to their claims. As the testimony is quite voluminous, only such facts as are necessary for disposition of the issues will be outlined.

II.
The trial on the issue of the property settlement was quite lengthy, spanning several months[1]. Of pertinence here is that in 1977, Mary Lou and Truman purchased property from Mary Lou's father.[2] Both contributed to the acquisition of this property which was traded eventually for eighteen acres, which comprise the marital property here in issue. This trade took place in 1979. The land was deeded from Byron and Magdeline Edge, Mary Lou's parents, to Mary. Mary Lou's testimony was corroborated by Edge who stated that only her name appeared on the deed when he and his wife signed. Edge testified that he purposefully did not include Truman's name on the deed because of marital problems between Mary and Truman. He was told later that the deed had been changed to add Truman's name. Mary asked that the chancellor declare the deed void.
Truman's testimony differed little from Mary Lou's or Edge's. When the eleven or so acres were traded for the eighteen acres, Truman and Mary signed the deed giving the eleven acres back to Edge. However, Truman was not aware until some three months after the conveyances that the eighteen acres was only deeded to Mary Lou.
I was going through the, our paper work one day and I noticed it and I asked her why, you know. And she said, well, that's the way Daddy wanted it. I said, well, that's not right. I said, we both paid for the land. I said, he's acting like I don't even exist. And she said, well, that's the way he wanted it. And I said, well, that's not fair, you know, I paid for the land too. I was part of it. And put a lot of sweat into it... . And so I told her to go over there and put my name on the deed, and which she did.

I didn't threaten her, like she says. I didn't get out of line, like she says. I just told her I wanted my name on the deed. And she went and did that.
(emphasis added). Rodney and Bradley remembered the events differently. They recalled hearing Truman threaten and beat Mary concerning the deed and ordering her to add his name.

*378 III.

1.
On cross-appeal, Mary argues that the court erred by not voiding or setting aside the deed. Truman's response is two-fold, both of which are meritorious. First, he argues that the cross-appeal was not timely filed and should be stricken. Secondly, he responds that the Court should decline to address the issues on the authority of Devereaux v. Devereaux, 493 So.2d 1310 (Miss. 1986). There, the Court stated that where no authority is cited in support of assignments of error on cross-appeal, the Court need not address the issue. On either of these grounds, we could decline to address the issues raised on cross-appeal.
Truman contends that pursuant to Supreme Court Rule 4, she did not file a "Notice of Appeal and that if her brief seeks to be entered as such notice," then she has not complied with Section 11-51-5 of the Mississippi Code in that more than ninety-days passed between judgment and the date she filed. In support of his contention, Truman cites and relies upon Rule 4 where it is stated that the notice in appeals and cross-appeals must be filed with the clerk of the trial court within thirty days after judgment or within fourteen days of the timely notice filed by another party whichever is later. He argues that a plain reading of the rule requires this Court to dismiss her cross-appeal.
Mary requests that the Court overrule the motion to strike. She responds that cross-assignments of error may be filed at the time the appellee's brief was due and her cross-appeal was perfected by filing her cross assignments of error. In support she relies upon Merchants Fertilizer & Phosphate Company v. Standard Cotton Gin, et al., 23 So.2d 906, 199 Miss. 201 (1945); Anderson v. Laurel Oil & Fertilizer Company, 87 So.2d 556, 228 Miss. 95 (1956); Rivers Construction Company v. Dubose, 241 Miss. 527, 130 So.2d 865 (1961). Truman counters that the precedential value of these cases has eradicated given that they were decided before the rules were adopted. Additionally, he argues, that the comment to Supreme Court Rule 1 provides that "[a]ll statutes, other sets of rules, orders, or decisions in conflict with these rules will otherwise be of no further force or effect."
The applicable law requires that the Court strike the cross-appeal for failure of Mary to act in accordance with the rules. Rule 4(c) governs the issue. It provides,
If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this rule, whichever period last expires.
Id. In the comment to the rule, it is stated that "[r]ule 4(c) requires that a notice of appeal for a cross-appeal be filed within 14 days after the date on which the first notice of appeal was filed, unless a longer period is prescribed by another provision of Rule 4."
Here, judgment was entered on July 9, 1990. Truman filed his notice of appeal some ten days later, on July 19. At that time it was incumbent upon Mary to file her notice of cross-appeal within fourteen days from July 19; this she did not do. Her failure to file is fatal to her contentions here and the motion to strike shall be granted.

2.
As his first issue, Truman contends that the court erred by awarding Mary an equitable lien in the sum of $22,305.65 against his interest in the marital home. In support of his position, Truman relies upon the cases of Regan v. Regan, 507 So.2d 54 (Miss. 1987) and Miller v. Miller, 298 So.2d 704, 706 (Miss. 1974). He argues that these cases stand for the proposition that co-owners of jointly owned property are equal co-contributors and owners and where one spouse makes substantially larger contributions in acquiring property, courts presume that the spouse has given a one-half interest to the other.
Mary counters that there is no question about the court's ability to make an equitable division of jointly owned property. She *379 buttresses this argument with the decisions of Watts v. Watts, 466 So.2d 889 (Miss. 1985) and Chrismond v. Chrismond, 211 Miss. 746, 52 So.2d 624 (1951).
Turning to the case before the Court, the disposition of the issue revolves around the use of equitable liens in divorce actions. For reasons to be outlined presently, the chancellor's order granting Mary an equitable lien against the interest of Truman, arising out of the money expended and work on her improvements to the house should be affirmed.
In Pincus v. Collins, 198 Miss. 283, 22 So.2d 361 (1945), this Court defined "equitable lien." It wrote,
Simply defined, an equitable lien, when created by contract, is the right by which a creditor is entitled to obtain satisfaction of his debt by resort to specified property belonging to the debtor, and no particular form of expression is necessary in such a contract so long as it is clear that the debtor intended to create an encumbrance.
198 Miss. at 287-88, 22 So.2d at 362. Although Pincus is not applicable to the present factual scenario because no contract granting an equitable lien is involved, it establishes that this Court does recognize such liens. More helpful to the disposition of the issue before the Court is Dobbs v. Bowling, 339 So.2d 985 (Miss. 1976), where equitable liens were discussed in general terms. There, the Court relied upon the following discussion provided in Corpus Juris Secundum
"Payment of another's debts or liabilities. Where debts or claims against property are paid in good faith by another on the express or implied request of the owner of the property, the one so paying is entitled to an equitable lien on the property for his reimbursement. However, such a person is not entitled to such lien if he voluntarily pays the debts of another without such other's request, unless, under the circumstances, the latter is estopped to deny the lien; nor is he entitled to a lien if her makes such payment in order to obtain wrongful possession of the property."
Id. at 986 quoting 53 C.J.S. Liens § 4, at 945 (1948). In a case of recent vintage, the Court wrote,
[A] lien may also be impressed out of recognition of general principles of right and justice, (citations omitted)
(2) A principal reason for impressing an equitable lien is to prevent unjust enrichment, i.e., where it would be contrary to equity and good conscience for an individual to retain a property interest acquired at the expense of another. (citations omitted)
Section 161 of the Restatement of Restitution states that "where property of one person can by a proceeding in equity by [sic] reached by another as security on the ground that otherwise the former would be unjustly enriched, an equitable lien arises."

Dudley v. Light, 586 So.2d 155, 159 (Miss. 1991) quoting Neyland v. Neyland, 482 So.2d 228 (Miss. 1986) (emphasis added)
In the case at bar, the factual findings in support of the chancery court's judgment include the fact that Mary purchased the land on which the second marital home was located with her own money. Both Mary and her father testified that she paid $100.00 per week until the $10,000.00 purchase price for the land was paid. Concerning the purchase of the second marital home, she testified that she used a $1,000.00 of her own money and with the aid of her father, borrowed $7,000.00 to buy the second marital home. Truman's name was not on this loan. Mary and her sons stated that she worked hard remodeling and renovating the home. It was their testimony that she made the majority of the improvements and contributions to the homestead. Mary stated that she paid the homeowners insurance and most of the utility bills.
Though Truman argues to the contrary and seeks to show that his contributions were equal to, if not greater than Mary's, the chancellor was well-within his discretion in granting an equitable lien to Mary against Truman's interest in the marital property. In so finding, this writer is ever mindful of the standard of review employed *380 at the appellate level and recognizes that this Court does not sit as a finder of fact. Reversal is permitted only in those cases where the chancellor was manifestly in error in his finding of fact and manifestly abused his discretion. Powers v. Powers, 568 So.2d 255, 257-58 (Miss. 1990) On this record, such cannot be said.
Moreover, that the court could grant Mary such a lien is supported by the code section governing child custody and alimony. Section 93-5-23, Mississippi Code Annotated (Supp. 1991), provides in parts pertinent to the discussion,
When a divorce shall be decreed from the bonds of matrimony, the court may, in its discretion, having regard to the circumstances of the parties and the nature of the case, as may seem equitable and just, make all orders ... touching the maintenance and alimony of the wife ... or any allowance to be made to her ... and shall, if need be, require . .. other guarantee for the payment of the sum so allowed. (emphasis added).
On these facts, the decision of the chancellor is beyond the court's authority to disturb. Where the factual findings of the chancellor are supported by substantial credible evidence, they are insulated from disturbance on appellate review. Jones v. Jones, 532 So.2d 574, 581 (Miss. 1988) quoting Norris v. Norris, 498 So.2d 809, 814 (Miss. 1986); Carr v. Carr, 480 So.2d 1120, 1122 (Miss. 1985).
Characteristic of equitable liens is that they are not estates or property in the thing itself, nor are they rights to recover the thing, that is they are not rights which may be the basis of a possessory action. They are merely a charge on property for the purpose of security, and are ancillary to and separate from the debt. They are neither debts nor rights of property, but merely remedies for a debt. Of extreme importance is the fact that such liens do not divest the debtor of title or possession. See 51 Am.Jur.2d Liens § 23 (1970).

3.
Truman argues that the court erred by not granting him an equitable lien on the 1985 Lincoln Town Car. He states that the evidence established that Mary paid for the Lincoln with jointly acquired funds. Truman asserts that the funds used to buy the car came from money paid to him and Mary Lou jointly after the sale of the first marital property. Thus, the holding in Jones v. Jones, 532 So.2d 574 (Miss. 1988) warrants reversal of the chancellor's decision.
Mary Lou responds that the Lincoln was titled in her name and was her personal vehicle; therefore it belonged to her and Truman had no claims to it.
The court granted to Mary Lou fee simple title to the car.
Mary Lou bought a used 1985 Lincoln Town Car for $10,000.00; a van was traded for it. Truman's recollection differed little from Mary Lou's. He recalled that the van traded for the car belonged to him. He gave the dealer the difference and put the car in Mary's name and she made the payments. Mary paid the monthly note on the car until she sold the first piece of property. Part of the proceeds from the sale of the property were used to pay for the car which was titled in her name only. Following the separation, Mary had use and possession of the car.
As an initial matter, Truman is correct in stating that Jones, 532 So.2d 574, empowers the court to order an equitable division of property jointly accumulated. In dividing property the court may look beyond the formal state of title. It, however, does not have to divide the property. The reason for dividing property is to seek equity by reference to the economic contribution made by each to the acquisition and maintenance of the property. Johnson v. Johnson, 550 So.2d 416 (Miss. 1989).
Here, the Lincoln was titled in Mary's name only. The court could have imposed a lien against Mary's interest in the car or ordered a division of the property. See Jones, 532 So.2d at 580. This it did not do. Instead the chancellor awarded Mary title, use, and possession of the Lincoln in fee simple.
*381 Unless the court committed manifest error, the decision should stand. On these facts, the decision of the chancellor is beyond our authority to disturb. Where the factual findings of the chancellor are supported by substantial credible evidence, they are insulated from disturbance on appellate review. Jones v. Jones, 532 So.2d 574, 581 (Miss. 1988) quoting Norris v. Norris, 498 So.2d 809, 814 (Miss. 1986); Carr v. Carr, 480 So.2d 1120, 1122 (Miss. 1985).
The proof established that Mary traded a van for the car and paid the note by herself and with her own money until she received the proceeds from the sale of the first marital property. She took some of the money received from the sale and paid the note in full. Truman, during his testimony, stated that the van traded for the car was titled in his name; he put the title to the car in Mary's name and admitted that she made the payments. He claims entitlement to an equitable lien on the basis that Mary paid for the car with money from the sale of the property that was jointly accumulated by him and her during the marriage. The court found that Mary gave the lion's share in contributions and improvements to both of the marital properties. Given the fact of a twenty-five year marriage in which Mary, and to a limited extent Truman, gave and took quite a bit, the economic realities of the judgment below and, as well, its form fall well within the Court's authority. Johnson, 550 So.2d at 421.

CONCLUSION
Based on the foregoing discussion, the judgment below is affirmed.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN and ROBERTS, JJ., concur.
McRAE, J., dissents with separate written opinion.
McRAE, Justice, dissenting:
I dissent from the majority opinion as it appears we are sending the wrong message to our trial courts and litigants. The majority holds that when a spouse gives a gift by deeding property to the other, that if, upon separation, that spouse can prove that she/he made all of the payments, as well as made improvements and repairs to the property while they lived together, then that spouse is entitled to an equitable lien for the amount of money spent on the property, which in effect negates a one-half (1/2) interest in the property. What will happen, then, if a wife who is at home tending to children, gives to her husband one-half interest, and he shows that he made all the payments on the house, or they acquire the property jointly and then the husband shows he made all the payments and did all the repairs with his money and not the wife's money, as she was at home tending the children, does he get an equitable lien on the property for that amount? This, in effect, would destroy her one-half interest in the property.
I disagree with this holding and therefore dissent from the majority opinion.
NOTES
[1] The record indicates that testimony was taken sporadically from March 1989 until November of the same year.
[2] The testimony established that they purchased between eleven to thirteen acres.