788 So.2d 800 (2001)
Gerald Keats BALDWIN, Jr., Appellant
v.
Kathie Hitt BALDWIN, Appellee.
No. 1999-CA-01512-COA.
Court of Appeals of Mississippi.
February 20, 2001.
Rehearing Denied May 1, 2001.
Certiorari Denied June 28, 2001.
*802 Gerald Keats Baldwin, Jr., Appellant Pro se.
J. Edward Rainer, Brandon, for Appellee.
Before SOUTHWICK, P.J., MYERS, and CHANDLER, JJ.
SOUTHWICK, Presiding Judge, for the Court:
¶ 1. This is the second appearance of this case before the Court of Appeals. In 1994, the chancellor granted Mrs. Baldwin a divorce and gave her custody of the children, then divided the property. In the initial appeal, the only error that we found was in Mrs. Baldwin's being awarded an interest in property that Mr. Baldwin had inherited from his mother. We reversed and remanded for further proceedings. The chancellor on remand awarded lump sum alimony to Mrs. Baldwin as a substitute for the reversed property award. On this second appeal, Mr. Baldwin reargues issues that we effectively concluded against him in our 1996 opinion. We find no error and affirm.
¶ 2. Because of the appellant's dispute about the import of our prior decision, we here incorporate and adopt that opinion, written by then-Chief Judge John J. Fraiser, Jr. Baldwin v. Baldwin, 691 So.2d 1040 (Miss.Ct.App.1996) (Table).

Opinion of November 12, 1996
¶ 3. On August 31, 1994, Special Chancellor Sugg granted Kathie Hitt Baldwin (Kathie) a divorce from Gerald Keats Baldwin (Jerry) on the ground of uncondoned adultery. After a trial on the issue of property settlement, the special chancellor granted Kathie custody of the children and distributed the marital property among the parties in accordance with the laws of equitable distribution. Part of the property distributed to Kathie was a tract of land given to Jerry by his late mother. The chancellor also awarded Kathie attorney's fees. The equitable distribution of nonmarital property and the award of attorney's fees are the heart of Jerry's appeal. Additionally, Kathie cross appeals claiming an entitlement to a percentage of Jerry's law degree and/or his law practice. The unabridged list of issues follows:
APPEAL
I. WHETHER THE CHANCELLOR ERRED IN AWARDING APPELLANT, GERALD KEATS BALDWIN, JR.'S, INHERITED PROPERTY TO APPELLEE, KATHIE HITT BALDWIN?
II. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION IN THE DISTRIBUTION OF ASSETS AND LIABILITIES?
III. WHETHER THE CHANCELLOR ERRED IN AWARDING ATTORNEY'S FEES TO APPELLEE?
CROSS APPEAL
I. THE CHANCELLOR MANIFESTLY ERRED IN NOT AWARDING THE APPELLEE AN INTEREST IN APPELLANT'S LAW DEGREE OR LAW PRACTICE EITHER BY WAY OF A PERCENTAGE OF HIS FUTURE *803 INCOME OR BY AN AWARD OF A LUMP SUM PAYMENT.
II. THE CHANCELLOR MANIFESTLY ERRED IN NOT REQUIRING APPELLANT TO MAINTAIN LIFE INSURANCE ON HIS LIFE FOR THE BENEFIT OF THE MINOR CHILDREN OF THE PARTIES AND BY NOT REQUIRING APPELLANT TO MAINTAIN HEALTH INSURANCE FOR THE CHILDREN AND BY NOT REQUIRING APPELLANT TO PAY THE MEDICAL AND DENTAL EXPENSES OF THE CHILDREN.
¶ 4. Finding most issues without merit, we nonetheless reverse and remand on the issue of the equitable distribution of Jerry's land for further proceedings not inconsistent with this opinion.

FACTS
¶ 5. Kathie and Jerry were married in January 1978. Kathie had just completed her bachelor's degree in business education and Jerry lacked one semester at Delta State before completing his bachelor's degree in education. The couple and their first child settled in Natchez, Mississippi. It was there that two other children were born. Kathie obtained a degree in elementary education, took care of the children, and taught school. Jerry taught school and coached. Both parties earned master's degrees, but money was not plentiful. In 1987, Jerry quit teaching and coaching and began working as an insurance salesman to earn more money for the family.
¶ 6. Jerry's mother died in December 1988, leaving Jerry a sum of money exceeding $100,000.00. Prior to her death, Jerry's mother conveyed a parcel of land to Jerry and his sister. Each received an undivided one-half interest in approximately 136 acres of land in Pontotoc County, Mississippi. When Jerry and Kathie received the inheritance money, they pondered the best way to use it. They decided the best investment they could make would be to use it for the purpose of paying Jerry's tuition to attend law school.
¶ 7. After taking the LSAT, Jerry applied to Mississippi College School of Law. He was accepted in August 1989, just a few days before classes started. Within the week, the family found a house to rent in Brandon; Kathie found a teaching job on the reservoir; and Jerry quit his insurance job and started law school. Kathie continued to teach, and Jerry used his inheritance money to pay for tuition and monthly household expenses. Jerry also obtained student loans to finish law school. He completed law school courses and passed the bar in September 1992. The parties separated on January 8, 1994. Kathie was granted a divorce on the grounds of uncondoned adultery. Jerry does not contest the grounds for divorce. The substance of this appeal is purely financial.
¶ 8. Kathie was granted custody of the parties' three minor children, with Jerry having abundant visitation privileges. Jerry was ordered to pay monthly periodic alimony in the sum of $306.00 (to be applied to a Deposit Guaranty home improvement loan), as well as child support in the amount of $581.00 each month. Additionally, he was ordered to pay the remaining balances of two credit cards in Kathie's name, as well as Kathie's attorney's fees.
¶ 9. Kathie received the family van and ski boat to sell in order to pay off 1993 income taxes. She was also awarded the family home in Brandon, Mississippi, with the directive to assume mortgage payments. Kathie received and assumed the loan balance on the family automobile. The family belongings and household items were distributed equitably among the parties.

*804 I. WHETHER THE CHANCELLOR ERRED IN AWARDING APPELLANT, GERALD KEATS BALDWIN, JR.'S, INHERITED PROPERTY TO APPELLEE, KATHIE HITT BALDWIN?
¶ 10. The chancellor in the trial court recognized that the parties were heavily indebted to various creditors. After considering the monthly income and needs of each party and their three children, the chancellor expressed in his opinion that Kathie's salary plus available child support was "not a sufficient amount of money for the support of Kathie and the three children." The chancellor then stated:
Jerry owns an undivided one-half interest in 136 acres of land in Pontotoc County, Mississippi.... * * * Under the authority of Hemsley v. Hemsley[,] No. 92-CA-00423, [639 So.2d 909], decided July 7, 1994, the court awards Kathie Jerry's one-half interest in the land. The award is made to enable Kathie to sell the land and apply the proceeds to the payment of the note on her 1993 van. Any excess over the amount necessary to pay the note will be retained by Kathie for the support of her and the minor children. * * * This increase will only enable Kathie to have the bare necessities of life. The Court would like to provide for more support, but no other available source of revenue has been disclosed.
¶ 11. Jerry challenges that ruling and maintains it is against current case law on equitable distribution. We agree in part. This Court reviews the chancellor's decision under the manifest error standard of review. Ferguson v. Ferguson, 639 So.2d 921, 930 (Miss.1994). The process regarding equitable distribution is governed by Ferguson:
Although this listing is not exclusive, this Court suggests the chancery courts consider the following guidelines, where applicable, when attempting to effect an equitable division of marital property:
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination *805 of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
Ferguson, 639 So.2d at 928. In order for property to be divided, it must be "marital property." The Mississippi Supreme Court defined marital property in Hemsley v. Hemsley:
Assets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage.
Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss.1994).
¶ 12. In his decision, the learned chancellor in the case below was attempting to follow what he thought were the precepts established by Hemsley, where the Mississippi Supreme Court awarded fifty percent of the husband's military retirement and civil service benefits to the wife. Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss.1994). Subsequent to the chancellor's opinion, judgment and the appeal of this cause, the Mississippi Supreme Court decided Johnson v. Johnson, 650 So.2d 1281, 1286 (Miss.1994). In Johnson, the wife claimed inherited timber lands as non-marital property not subject to equitable distribution. Johnson, 650 So.2d at 1286. In holding that the wife's inherited land and other inherited assets that had not been commingled, retained their nonmarital character, and thus was not subject to equitable distribution, the Court further explained the proper procedure for equitable division of marital property including procedure to be employed when such division leaves a deficit for one party:
Division of marital assets is now governed under the law as stated in Hemsley and Ferguson. First, the character of the parties' assets, i.e., marital or nonmarital, must be determined pursuant to Hemsley. The marital property is then equitably divided, employing the Ferguson factors as guidelines, in light of each parties' [sic] nonmarital property. Ferguson, 639 So.2d at 928. If there are sufficient marital assets which, when equitably divided and considered with each spouse's nonmarital assets, will adequately provide for both parties, no more need be done. If the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered. This process does not require divestiture of inherited or gift acquired nonmarital property.
Johnson, 650 So.2d at 1287.
¶ 13. The Johnson court also stated:
This Court recognizes that property clearly obtained by one party through inheritance or acquired by one party by gifts is nonmarital property not subject to equitable distribution. In doing so, this Court follows other equitable distribution states that distinguish these types of property from the marital estate.
Johnson, 650 So.2d at 1286 (citations omitted).
¶ 14. The chancellor in the trial court expressly found that after the marital assets of the parties were equitably divided and considered with each spouse's nonmarital assets Kathie and the children were left with a deficit. The chancellor attempted to adjust the deficit and adequately provide for Kathie and the children by requiring divestiture of Jerry's gift acquired nonmarital property and vesting its title in Kathie. This action was contrary to Johnson, which provides that in such *806 cases alimony should be considered based on the value of the nonmarital property. Id. [at 1287.]
¶ 15. Thus, while the learned chancellor endeavored to achieve equity by awarding Kathie Jerry's Pontotoc County land, he erred in awarding to Kathie, under the doctrine of equitable distribution, nonmarital property obtained by Jerry as a gift from his mother.
¶ 16. Johnson, however, does not deplete the trial court's arsenal of equitable weapons to secure payment of support monies provided pursuant to its pronouncements, including the power of the chancery court to impose an equitable lien to secure payment of alimony or child support. Maslowski v. Maslowski, 655 So.2d 18, 21 (Miss.1995). The authority to grant an equitable lien is governed by section 93-5-23 of the Mississippi Code. Id. See also Lindsey v. Lindsey, 612 So.2d 376, 380 (Miss.1992) (holding court's authority to grant equitable lien in divorce proceedings is supported by section 93-5-23). The supreme court delineated the characteristics of an equitable lien in Lindsey v. Lindsey, 612 So.2d 376, 380 (Miss.1992):
Characteristic of equitable liens is that they are not estates or property in the thing itself, nor are they rights to recover the thing, that is they are not rights which may be the basis of a possessory action. They are merely a charge on property for the purpose of security, and are ancillary to and separate from the debt. They are neither debts nor rights of property, but merely remedies for a debt. Of extreme importance is the fact that such liens do not divest the debtor of title or possession.
Lindsey, 612 So.2d at 380. An equitable lien can arise as the result of a contractual agreement. Maslowski, 655 So.2d at 21. Additionally, the chancery court has the power to impress a lien as security for a judgment. Id. "In Dunn v. Dunn, 609 So.2d 1277, 1283-84 (Miss.1992), the chancellor ordered an equitable lien against the husband's interest in the homestead to secure the payment owed to the wife by the husband's business. The Mississippi Supreme Court has also said that the payment of alimony may be secured by an equitable lien." Maslowski, 655 So.2d at 23 (citations omitted).
¶ 17. Pursuant to Johnson, we reverse the decision of the chancellor granting Jerry's nonmarital Pontotoc County property to Kathie. We remand this cause to the chancery court for the purpose of applying Johnson, considering the additional needs of Kathie and her children because of the deficit, and securing the payment of any allowable alimony and/or child support by an equitable lien on Jerry's Pontotoc County property. Additionally, determination of the current value of the Pontotoc County property should be made to determine the lien limits.

II. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION IN THE DISTRIBUTION OF ASSETS AND LIABILITIES?
¶ 18. Jerry contends the chancellor erred by making an inequitable distribution of property. He claims the chancellor made an inequitable assignment of assets and liabilities as a means to punish him for his adultery. However, Jerry makes no specific complaint nor does he point to specific inequities in his brief. Instead he makes a general, broad complaint about the inequity of the division of assets and liabilities. After reviewing the chancellor's division of property under the eight Ferguson factors, and without any guidance from Jerry as to what specifically was unjust, we find no error with the chancellor's equitable division of the marital property. This issue is without merit.

*807 III. WHETHER THE CHANCELLOR ERRED IN AWARDING ATTORNEY'S FEES TO APPELLEE?
¶ 19. The chancellor awarded Kathie attorney's fees in the amount of $5,475.00. Jerry maintains the chancellor abused his discretion because Kathie could afford to pay her bills. An award of attorney's fees in divorce cases is within the sound discretion of the trial court. Armstrong v. Armstrong, 618 So.2d 1278, 1282 (Miss.1993). Unless a chancellor abuses his discretion, his decision will be upheld. Id. The Mississippi Supreme Court addressed the awarding of attorney's fees in Creekmore v. Creekmore, 651 So.2d 513, 520 (Miss.1995):
The award of attorney fees in divorce cases is left to the discretion of the chancellor, assuming he follows the appropriate standards. Attorney fees are not generally awarded unless the party requesting such fees has established the inability to pay. "The fee should be fair and should only compensate for services actually rendered after it has been determined that the legal work charged for was reasonably required and necessary." When considering an award of attorney fees, a sum sufficient to secure a competent attorney is the criterion by which we are directed. The fee depends on... relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
Attorney fees have been refused "where little or no evidence has been presented to substantiate the amount requested." Unless the chancellor abused his discretion or is manifestly wrong, his decision regarding attorney fees will not be disturbed on appeal.
Creekmore, 651 So.2d at 520 (citations omitted). Kathie testified to her inability to pay her attorney. She stated that she had no savings except for $75.00 in one savings account, the minimum to keep the account open. Her attorney testified to the time he spent on Kathie's case and his reasonable charges. The record documents the difficulty and novelty of some of the issues involved in this case. The chancellor's decision to award Kathie attorney's fees is supported by trial testimony meeting Creekmore standards and not resulting in an abuse of discretion.

CROSS APPEAL

I. THE CHANCELLOR MANIFESTLY ERRED IN NOT AWARDING THE APPELLEE AN INTEREST IN APPELLANT'S LAW DEGREE OR LAW PRACTICE EITHER BY WAY OF A PERCENTAGE OF HIS FUTURE INCOME OR BY AN AWARD OF A LUMP SUM PAYMENT.
¶ 20. Kathie argues that the chancellor erred in not awarding her an interest in Jerry's law degree or a percentage of his practice by way of a percentage of his future income or as lump sum alimony. She claims that the law degree was marital property because she contributed to acquiring it. She relies on the eight Ferguson factors and McNally v. McNally, 516 So.2d 499, 499 (Miss.1987) to support her argument. In McNally v. McNally, Cecile McNally appealed the chancery court's decision to deny her alimony completely. Id. at 503. The supreme court noted that its hands were tied because it could not impose alimony where the chancery court had denied it and not retained jurisdiction over the alimony issue. *808 Id. The supreme court stated that the chancery court should have retained jurisdiction of the alimony issue in McNally's case so that she could have obtained resolution of the issue on a later date. Id. at 503. It was noted that Leo McNally's income was bound to increase as a result of dental practice. Id. at 502-03. It was from this income that Cecile should have received alimony, if the chancery court had retained jurisdiction. Id. at 503. Kathie relies on this case to support her position that she deserves a percentage of Jerry's practice. However, the factual situations of the two cases vary in one significant aspect. Cecile McNally made more than twice the amount of money her husband did during their eight year marriage, and she put her husband through dental school. Id. She was the breadwinner of the family. She not only put Leo through dental school, but also took care of Leo's brother who lived with them for five years. Id. Kathie on the other hand, continued teaching school as she had done throughout their marriage. Jerry not only paid his tuition with his inheritance money, he also provided Kathie with an average of $2,000.00 a month for living expenses.
¶ 21. The Mississippi Supreme Court has not spoken to the question of awarding a percentage of one's professional business as alimony.[[1]] Neither the supreme court nor the state legislature has elucidated on the characterization of a professional degree as marital property subject to division. As we stated earlier, this Court is constrained by precedents of the Mississippi Supreme Court. In the absence of clear authority, we affirm the decision of the chancellor and find no error in his refusal to grant Kathie a percentage of Jerry's future income from his law practice.

II. THE CHANCELLOR MANIFESTLY ERRED IN NOT REQUIRING APPELLANT TO MAINTAIN LIFE INSURANCE ON HIS LIFE FOR THE BENEFIT OF THE MINOR CHILDREN OF THE PARTIES AND BY NOT REQUIRING APPELLANT TO MAINTAIN HEALTH INSURANCE FOR THE CHILDREN AND BY NOT REQUIRING APPELLANT TO PAY THE MEDICAL AND DENTAL EXPENSES OF THE CHILDREN.
¶ 22. Kathie asserts that the chancellor erred in not ordering Jerry to pay medical, dental, and cancer insurance on the three children. Additionally, she claims that the chancellor should have ordered Jerry to take out a life insurance policy on himself for the benefit of the three minor children. The Mississippi Supreme Court has explained that the payment of medical and dental insurance as well as the keeping of a life insurance policy on one's life are methods of child support that may be ordered:
Mississippi Code Annotated, § 93-5-23 (Supp.1988), provides the trial court with authority to make all orders incident to divorce "touching the care, custody and maintenance of the children of the marriage...." In addition to the authority conferred by Section 93-5-23, Miss.Code Ann., § 93-11-65 (Supp.1988), confers upon the chancery court of the proper county the authority to hear and determine matters relative to the "custody, care, support and maintenance of minor *809 children ..." An order issued under the authority of either of the above code sections dealing with the care and maintenance of children of the marriage may, and often does, provide for the payment of several distinct types of expenses. The phrase "child support" is often used to describe all of these distinct expense payments. However, under the above cited code sections, regular child support is but one type of expense which the court may award for the care and maintenance of children. In the context of child care and maintenance orders, regular child support refers to the sums of money which the particular parent is ordered to pay for the child's basic, necessary living expenses, namely food, clothing, and shelter. Other sums which a parent may be ordered to pay for the care and maintenance of the child are the expenses of a college, or other advanced education.... Still other items which may properly be awarded pursuant to a valid child care and maintenance order are health related expenses such as reasonable and necessary medical, dental, optical, and psychiatric/psychological expenses. A parent can also be required to absorb insurance expenses such as maintaining medical and hospitalization insurance on the child, and maintaining a life insurance policy on his/her own life with the child named as beneficiary.... Of course, the foregoing items are not intended to be an exclusive listing, but are merely examples of the real distinction between regular child support and other types of payments for which a parent may become obligated under the terms of a valid child care and maintenance order under Sections 93-5-23 and 93-11-65.
Nichols v. Tedder, 547 So.2d 766, 768-69 (Miss.1989) (citations omitted). As the opinion states, awards of other sums in addition to the regular child support may be ordered. However, the payment of insurance and the keeping of a life insurance policy are not mandatory. Section 93-5-23 of the Mississippi Code of 1972 states:
In the event a legally responsible parent has health insurance available to him or her through an employer or organization that may extend benefits to the dependents of such parent, any order of support issued against such parent may require him or her to exercise the option of additional coverage in favor of such children as he or she is legally responsible to support.
¶ 23. Kathie testified that as an employee of the public schools, she received state sponsored health insurance. She testified that she had the children on this policy and paid their monthly premiums. The decision to order Jerry to pay health insurance for the three minor children and to take out a life insurance policy on himself was left to the chancellor's discretion. In light of Kathie's access to health and dental insurance through her employer, and her ability to pay for it, the chancellor did not abuse his discretion. This issue is without merit.
¶ 24. We reverse on the issue of equitable distribution of Jerry's Pontotoc County land and remand to the chancery court for further proceedings not inconsistent with this opinion. We affirm the actions of the chancellor on all other issues. [End of Court's prior opinion.]
¶ 25. After our 1996 reversal, the chancellor on remand ordered that title to the Pontotoc County property be transferred back to Jerry. The chancellor determined that there was a deficit in the amount of $16,000 and awarded Kathie that amount as lump sum alimony. The chancellor also found Jerry to be in contempt for failure to pay certain credit card debt and Kathie's attorney's fees as was required by *810 the divorce decree. Jerry was ordered to pay these sums plus interest. Jerry was awarded a credit against the amount owed for rents which Kathie had collected from the Pontotoc County property, taxes and appraisal fees.
¶ 26. The total amount for lump sum alimony, attorney's fees and credit card debt was about $21,000, without interest. As security the chancellor awarded Kathie an equitable lien on the Pontotoc County property and fixed the lien limit at $23,000. Jerry was given 45 days to pay the amount the lien could be enforced on the Pontotoc County property.

Deficit
¶ 27. Since we ordered this inherited property not be considered a marital asset subject to distribution, the chancellor had title conveyed back to Jerry. We first look at why that property was initially ordered conveyed. In that way we may discern what was the proper range of discretion on remand in seeking a substitute for that property. The chancellor's 1994 opinion gave this as the reason for awarding the property:
The award is made to enable Kathie to sell the land and apply the proceeds to the payment of the note on her 1993 van. Any excess over the amount necessary to pay the note will be retained by Kathie for the support of her and the minor children ... A sale should produce, at the very least, enough to pay off the van note ...
The total balance owed on the 1993 van as of August 1994, was $16,490 according to the schedule of debts listed in the chancery court's original opinion.
¶ 28. Therefore, on remand the chancellor ordered lump sum alimony of $16,000 to compensate for this loss of real property. The chancellor expressly stated that $16,000 represented the amount due on the 1993 van that had been awarded to Kathie in the 1994 divorce.
¶ 29. Now on appeal Jerry claims that this was arbitrary. He would have the chancellor follow the procedure again for the equitable division of property. E.g., Johnson v. Johnson, 650 So.2d 1281 (Miss. 1994). Whatever the general merit of the point, the chancellor was not making his decision de novo. Jerry raised the issue of equitable division of the property in his first appeal to this court. In our 1996 opinion, we recognized the chancellor's finding that after the marital property was equitably divided, that Kathie was left with a deficit. We found no abuse of discretion in the chancellor's finding that property worth $16,000 needed to be conveyed to Kathie, but just held it could not be the inherited real property. During the remand, there was no reason for the chancellor to make a new equitable division of property and determine the existence and amount of the deficit since we had affirmed on those points. There was one error to correct, and correcting it did not require unraveling everything else that the chancellor had done.

Lump Sum Alimony
¶ 30. The chancellor, in the September 1, 1994 final judgment of divorce, awarded Kathie monthly periodic alimony in the amount of $306. There was no award in the final judgment for lump sum alimony. We have just discussed that on remand from our 1996 decision, the chancellor awarded $16,000 lump sum alimony as a correction to his earlier ordered transfer of title to the inherited Pontotoc County property. Jerry now alleges that this award of lump sum alimony on remand was barred by res judicata since no such alimony had been ordered in the original divorce.
¶ 31. The doctrine of res judicata provides "that when a court of competent *811 jurisdiction enters a final judgment on the merits of an action, the parties or their privies are precluded from relitigating claims that were decided or could have been raised in that action." Aetna Cas. and Surety Co. v. Berry, 669 So.2d 56, 66 (Miss.1996). That doctrine has no application to an issue reversed by an appellate court and which is subject to reconsideration on remand. There was quite simply no final judgment on what to do with the deficit left after equitable distribution of marital property.

Equitable Lien
¶ 32. In the 1994 judgment of divorce, Jerry was ordered to pay attorney's fees and interest, and to satisfy the debt owed on two credit cards held in Kathie's name. In the initial appeal we affirmed the chancellor's findings as to the division of property and the award of attorney's fees to Kathie. On remand the chancery court awarded Kathie an equitable lien for these debts. Jerry argues that an equitable lien cannot be used to secure credit card debt or attorney's fees.
¶ 33. Jerry relies upon Lindsey v. Lindsey, 612 So.2d 376 (Miss.1992). In fact, Lindsey restates the principle that a chancellor has the authority to impose an equitable lien. Lindsey, 612 So.2d at 380. A chancery court has the authority to grant an equitable lien as security for a judgment. Maslowski v. Maslowski, 655 So.2d 18, 21 (Miss.1995). Jerry was ordered to pay the credit card debt and appellee's attorney's fees in the August 31, 1994 final judgment of divorce. Therefore the obligation to pay the appellee's attorney's fees and credit card debt was a judgment rendered against Jerry for which the chancellor had the authority to attach an equitable lien as security.

Enforcement of Lien
¶ 34. On remand the chancellor gave the appellant 45 days to satisfy the various payments to his former wife. If the debts were not timely satisfied, Kathie could enforce the lien and have the Pontotoc County property sold. The appellant argues that the chancellor's ruling is invalid because it divests him of title to his property. His argument relies on precedents that an equitable lien is not an estate in property but is only security. "Of extreme importance is the fact that such liens do not divest the debtor of title or possession." Lindsey, 612 So.2d at 380. Exactly so, but the argument made from this premise then ignores that the lien would not be security unless it could become the basis for an action to force the sale of the property. The lien does not divest title, but it can be used to cause the divesting if the debt secured is not timely paid.
¶ 35. The right to enforce the lien is a mechanism by which the creditor can satisfy the debt if the debtor chooses not to honor an obligation. An equitable lien would be meaningless unless the lienholder had the power to enforce it.
¶ 36. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS and CHANDLER, JJ., concur.
PAYNE, J., not participating.
NOTES
[1] Since the date of our 1996 opinion, the Supreme Court has declared that a professional degree is not a marital asset. However, some compensation is due at divorce to a spouse who financially contributed to the acquiring of the other spouse's degree. Guy v. Guy, 736 So.2d 1042, 1044 (Miss.1999). This issue is not raised again on the second appeal and need not be reconsidered in light of Guy.