# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01285-COA

**TELECOM TOWER GROUP, LLC**                                                    APPELLANT/
                                                                                                 CROSS-APPELLEE

v.

**HONEYSUCKLE CREEK HOLDINGS, INC.**                                   APPELLEE/
                                                                                                CROSS-APPELLANT

DATE OF JUDGMENT:                    02/13/2015
TRIAL JUDGE:                              HON. J. DEWAYNE THOMAS
COURT FROM WHICH APPEALED:   HINDS COUNTY CHANCERY COURT,
                                                SECOND JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:        GARY DALE THRASH
                                                JOHN NEWTON SATCHER II
                                                ADAM FRAZIER THRASH
ATTORNEYS FOR APPELLEE:          MICHAEL JAMES BENTLEY
                                                MICHAEL LELAND COWAN
NATURE OF THE CASE:                 CIVIL - OTHER
DISPOSITION:                           AFFIRMED - 09/12/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., ISHEE AND FAIR, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.    Telecom Tower Group LLC (Telecom) appeals the judgment of the Hinds County Chancery Court, Second Judicial District, allowing Honeysuckle Creek Holdings Inc. (HCH) to garnish income that Telecom received from a number of cellular-tower leases. The chancellor allowed the garnishment as a means to satisfy the equitable lien that HCH obtained against a property lease that Telecom obtained through an assignment from Cross Development LLC (Cross). Finding no error, we affirm the chancellor's judgment.

FACTS

¶2.     In February 2006, HCH obtained a lessee's interest in approximately .23 acres of land via an Option and Lease Agreement that it entered with Judy Washington. Per that agreement, Washington leased her property to HCH so it could build a cellular tower. The initial term was five years, and HCH agreed to pay Washington $450 per month.

¶3.     In April 2006, HCH entered an agreement with Cross. HCH would assign its lessee's interest in the land to Cross for $75,000 (minus Cross's expenses for preparing the site for construction of the tower). HCH also had to fulfill a number of other conditions before Cross had to pay, including obtaining a signed lease from Cingular Wireless LLC in which Cingular agreed to install telecommunications equipment on the tower. In November 2006, HCH assigned its land lessee's interest to Cross, which subsequently began making lease payments to Washington. In January 2007, Cross finished building the tower.

¶4.     It is unclear when HCH entered a lease agreement with Cingular, but it is undisputed that one existed. It is also undisputed that Cingular unilaterally decided not to honor the tower-lease agreement. The tower went unused for eleven months. In late 2007, Cross entered a separate tower lease with Cingular, which installed its equipment on the tower. In other words, Cross was the tower lessor, and Cingular was the tower lessee. Cross refused to pay HCH for the assignment of the land lease because Cross incurred damages due to the eleven-month delay in obtaining a paying tower lease.

¶5.     In January 2008, HCH sued Cross for breach of contract. HCH wanted Cross to

perform under the assignment agreement by paying the full assignment price plus interest. Alternatively, HCH wanted to cancel the assignment. HCH later filed a lis pendens notice on the tower site. The chancellor subsequently entered a default judgment for HCH and set the property to be sold at a public auction. Telecom successfully sought an injunction to prevent the public sale. Telecom also intervened in HCH's lawsuit against Cross. By then, Cross had assigned its land-lessee and tower-lessor interests to Telecom in exchange for a reduction of the debt that Cross[1] owed Telecom's parent company. The chancellor consolidated both lawsuits.

¶6. In May 2011, T8 Unison Site Management LLC[2] offered to buy Washington's lessor interest in the land. T8's offer contemplated additional adjacent land, thus creating what Telecom describes as a superior interest in a larger tract of real property. In June 2011, Telecom received notice from T8 that Washington had assigned her land lessor's rights, and Telecom should make its land-lease payments to T8.

¶7. Telecom told T8 that it planned to exercise its right of first refusal that it had obtained in the "double-assigned" land-lease agreement. In July 2011, Telecom sued T8 and Washington. Telecom also joined HCH as an interested party. HCH filed an answer, but it did not make a claim against Washington's interest or comment on Telecom's claim against T8's interest. HCH later successfully sought to be dismissed from Telecom's lawsuit.

---

[1] Calvin Bailey is the former co-owner of Cross. Per Calvin, Cross officially dissolved sometime during 2007 because it could not pay its debts.

[2] This company later changed its name to T8 Ulysses Site Management LLC.

¶8. In October 2011, the parties went to trial on the consolidated lawsuits involving HCH and Cross/Telecom. On March 7, 2012, the chancellor entered a judgment memorializing his bench opinion.[3] The chancellor ordered Cross to pay HCH approximately $50,000 in damages and prejudgment interest. HCH also received an equitable lien against the land lease. Telecom appealed, but this Court affirmed the chancellor's judgment. *Telecom Tower Grp. LLC v. Honeysuckle Creek Holdings Inc.*, 130 So. 3d 135, 139 (¶17) (Miss. Ct. App. 2013) ("*Telecom I*").

¶9. On December 31, 2013, Telecom and T8 executed a "Wireless Communication Easement and Assignment Agreement." Through that agreement, Telecom acquired T8's interest as the land lessor. As a result, Telecom no longer needed to make land-lease payments. On February 6, 2014, the mandate issued in *Telecom I*. One week later, Telecom filed a "Memorandum of Termination of the [Land] Lease." Two weeks after the mandate issued, Telecom sent HCH a letter stating that Telecom did not owe HCH any money because of the equitable lien.

¶10. On September 29, 2014, HCH filed a "motion to unwind fraudulent termination of the leasehold interest, to enforce equitable lien, and to establish a constructive trust." HCH claimed Telecom acquired T8's land-lessor interest to fraudulently terminate the lease that was subject to HCH's equitable lien. HCH wanted the chancellor to "unwind" the land-lease

---

[3] In the bench opinion, the chancellor held that Telecom knew or should have known from prior dealings that HCH had an interest in the land, and Telecom should have cured that before closing on the lease or the land.

termination. HCH also claimed that Telecom had received tower-lease payments for the tower on the land-lease property, and Telecom had fraudulently retained that tower-lease income. HCH reasoned that it should be allowed to garnish Telecom's tower-lease income to satisfy HCH's judgment against Cross. HCH also wanted to garnish any money that Cross or Telecom paid for the land lessor's interest. Finally, HCH sought a constructive trust.

¶11. On September 30, 2014, HCH filed a suggestion for writ of garnishment against Cross and Telecom. HCH also filed a writ of garnishment against garnishee AT&T Mobility LLC (formerly Cingular). Telecom moved to quash the writ of garnishment. Telecom argued that HCH's judgment against Cross was not a basis to garnish its income. HCH responded to Telecom's motion to quash the writ of garnishment, and Telecom responded as an "intervenor defendant" to HCH's "motion to unwind."

¶12. On January 5, 2015, the chancellor conducted a hearing. The chancellor entered his order on February 19, 2015. The chancellor held that HCH's equitable lien should not be extinguished under the doctrine of merger, and "reaffirm[ed]" HCH's equitable lien. The chancellor later denied Telecom's motion for reconsideration. On August 10, 2015, HCH filed a motion to release the money held in the chancery court's registry. Telecom appeals. According to Telecom, the chancellor erred by issuing the writ of garnishment and denying the motion to quash it. HCH has filed a "conditional" cross-appeal. Because we affirm the chancellor's judgment, there is no need to address HCH's cross-appeal.

STANDARD OF REVIEW

5

¶13. We "employ a limited standard of review in appeals from chancery courts." *Telecom I*, 130 So. 3d at 138 (¶13). We will not disturb the chancellor's factual findings "when supported by substantial evidence unless the [chancellor] abused [his] discretion, was manifestly wrong, clearly erroneous[,] or applied an erroneous legal standard." *Id*. We review questions of law de novo. *Id*.

DISCUSSION

¶14. Telecom devotes a substantial portion of its brief to the concept that garnishment was improper because HCH does not have an equitable lien on the property. However, this was clearly resolved by *Telecom I*. Even so, we reiterate:

> Equitable liens . . . are not estates or property in the thing itself, nor are they rights to recover the thing, that is they are not rights which may be the basis of a possessory action. They are merely a charge on property for the purpose of security, and are ancillary to and separate from the debt. They are neither debts nor rights of property, but merely remedies for a debt. Of extreme importance is the fact that such liens do not divest the debtor of title or possession.

*Baldwin v. Baldwin*, 788 So. 2d 800, 806 (¶16) (Miss. Ct. App. 2001) (quoting *Lindsey v. Lindsey*, 612 So. 2d 376, 380 (Miss. 1992)). A chancellor may "impress a[n equitable] lien as security for a judgment." *Id*. A chancellor may also use an equitable lien to prevent unjust enrichment when it would be inequitable for someone to retain a property interest acquired at someone else's expense. *Neyland v. Neyland*, 482 So. 2d 228, 230 (Miss. 1986).

¶15. What is more, we agree with the reasoning of the Colorado Supreme Court, which has held that "[a]n equitable lien is good as against all persons who acquired an interest with

6

knowledge or notice of [a] plaintiff's equitable lien . . . ." *Leyden v. Citicorp Indus. Bank*, 782 P.2d 6, 12 (Colo. 1989). "'Notice,' in the context of an equitable lien[,] . . . is notice of the facts giving rise to the lien[,] . . . and 'a person has notice of facts giving rise to a [lien] if he knows the facts *or should know them*.'" *Id*. (quoting Restatement of Restitution § 174 (1937)). Here, Telecom did not just obtain Cross's interest as the property lessor and tower lessee. In 2007, Cross's former president, Doug Irving, resigned and began working as Telecom's site-development manager. *Telecom I*, 130 So. 3d at 137 (¶8). It was then that Cross assigned its rights to Telecom. *Id*. And Irving previously testified that HCH would have normally been paid for the assignment at the time that it occurred. *Id*. Accordingly, Telecom at least had constructive notice of the facts and circumstances giving rise to the equitable lien when it obtained its interest in the property.

¶16. Telecom argues that garnishment was improper because HCH did not have a money judgment against it. It is true that the chancellor only awarded HCH a money judgment against Cross, but the chancellor also awarded HCH an equitable lien against Telecom's property interest in the land. And Telecom makes much of the chancellor's ruling that the equitable lien applied to the land lease – not the tower lease. At that time, Telecom was the lessee in that arrangement. Narrowly interpreting the equitable lien as though it was solely enforceable against Telecom's obligation *to pay* Washington would render the equitable lien meaningless in a practical sense. "An equitable lien would be meaningless unless the lienholder had the power to enforce it." *Baldwin*, 788 So. 2d at 811 (¶35). The equitable lien

7

could only be a remedy if it also extended to Telecom's interest as the tower lessor, and that interest only existed by virtue of the rights that Cross assigned Telecom as the land lessee. It follows that HCH could satisfy its equitable lien by tracing Telecom's tower-lease income that flowed through Telecom's land lease. *See First Nat'l Bank of Jackson v. Huff*, 441 So. 2d 1317, 1322 (Miss. 1983) ("Through tracing, a person who in the first instance would be entitled to the restitution of money or other property is often permitted to assert his claim against a substituted asset – an asset [that] is traceable to or the product of such money or other property."). And "the chancery court has access to broad equitable powers to enforce its judgments . . . ." *Ladner v. Ladner*, 843 So. 2d 81, 82 (¶4) (Miss. Ct. App. 2003).

¶17. Finally, Telecom argues that HCH's equitable lien was terminated through merger of title when Telecom acquired Washington's rights as the land lessor from T8. "A merger generally takes place when two estates, either related inter se as derivative and original, or else being both derived out of the same original, and both being held in the same right, meet together in the same" owner. *City Sav. Bank & Tr. Co. of Vicksburg v. Cortright*, 122 Miss. 75, 84, 84 So. 136, 138 (1920). But "[t]his rule . . . will not be applied by[] a court of equity when the extinguishment of the lessor estate will work an injustice to . . . another person interested in its preservation." *Id*. We agree that the application of merger, to the extent that it would extinguish HCH's equitable lien, would result in an injustice under the circumstances. We also find no merit to Telecom's claim that HCH could *only* garnish its tower-lease income solely from rent payments on the tower at issue. To the extent that the

8

garnished income flowed from other tower leases, that income may be set off from the income on the precise tower at issue. Based on the foregoing, we affirm the chancellor's judgment.

## ATTORNEYS' FEES

¶18. HCH has filed a motion for attorneys' fees under Rule 38 of the Mississippi Rules of Appellate Procedure and the Litigation Accountability Act set forth in Mississippi Code Annotated section 11-55-5(1) (Rev. 2012). Rule 38 provides that this Court "shall award just damages and single or double costs to the appellee" in the event that we "determine that an appeal is frivolous." Similarly, "the Litigation Accountability Act permits a court to impose sanctions on an attorney who asserted any claim or defense[] that is without substantial justification, or was interposed for delay or harassment[,] or if the attorney unnecessarily expanded the proceedings by other improper conduct." *In re Spencer*, 985 So. 2d 330, 338 (¶26) (Miss. 2008). Although we agree with the chancellor's conclusion that Telecom's positions were meritless, we decline to find that Telecom's behavior in this appeal or the underlying litigation merits sanctions or an award of attorneys' fees.

## CONCLUSION

¶19. Accordingly, the judgment permitting garnishment against Telecom to an equitable lien on Telecom's property is affirmed. Because we affirm the chancery court's judgment on direct appeal, there is no need to address HCH's "conditional" cross-appeal.

¶20. **AFFIRMED.**

9

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., NOT PARTICIPATING.**