# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-01206-SCT

*DEBORAH WEST*

*v.*

*CHARLES TIMOTHY WEST, WEST QUALITY*
*FOOD SERVICES, INC., AND COASTAL*
*EXPRESS, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/29/2020 |
| TRIAL JUDGE: | HON. FRANKLIN C. McKENZIE, JR. |
| TRIAL COURT ATTORNEYS: | TERRY L. CAVES |
| | DAVID BRIDGES |
| | MARK A. NELSON |
| COURT FROM WHICH APPEALED: | CHANCERY COURT OF THE FIRST |
| | JUDICIAL DISTRICT OF JONES COUNTY |
| ATTORNEY FOR APPELLANT: | DAVID BRIDGES |
| ATTORNEYS FOR APPELLEES: | TERRY L. CAVES |
| | MARK A. NELSON |
| | NED ANDREW NELSON |
| | RISHER GRANTHAM CAVES |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | ON DIRECT APPEAL: REVERSED AND |
| | REMANDED. ON CROSS-APPEAL: |
| | REVERSED AND REMANDED - 09/21/2023 |
| MOTION FOR REHEARING FILED: | |

## CONSOLIDATED WITH

## NO. 2022-CA-00147-SCT

*DEBORAH GAYLE THORNTON WEST*

*v.*

*CHARLES TIMOTHY WEST*

DATE OF JUDGMENT:                01/18/2022
TRIAL JUDGE:                     HON. FRANKLIN C. McKENZIE, JR.
COURT FROM WHICH APPEALED:       CHANCERY COURT OF THE FIRST
                                 JUDICIAL DISTRICT OF JONES COUNTY
ATTORNEY FOR APPELLANT:          TODD BURWELL
ATTORNEYS FOR APPELLEE:          TERRY L. CAVES
                                 RISHER GRANTHAM CAVES
NATURE OF THE CASE:              CIVIL - DOMESTIC RELATIONS
DISPOSITION:                     REVERSED AND RENDERED - 09/21/2023
MOTION FOR REHEARING FILED:

**CONSOLIDATED WITH**
**NO. 2002-IA-01158-SCT**

**CONSOLIDATED WITH**
**NO. 2008-CA-01700-SCT**

**CONSOLIDATED WITH**
**NO. 2009-CA-01877-SCT**

**CONSOLIDATED WITH**
**NO. 2010-CA-00316-SCT**

**BEFORE KITCHENS, P.J., COLEMAN AND ISHEE, JJ.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This case, which has been ongoing for more than twenty years, is before this Court now for a third time. The direct appeal involves the West family-owned corporations, West Quality Food Services, Inc. (West Quality), and Coastal Express, Inc. (Coastal) (collectively, "West Entities"), and Deborah West (Debbie West), former wife of Charles Timothy West (Tim West). The major issue on direct appeal is whether the chancellor erred in his priority-of-liens analysis. On cross-appeal, which is brought by Tim West, the issue is whether the chancellor considered his claim for retroactive child support.

2

¶2.    While the above issues were pending on appeal, Tim West filed a separate action to challenge the statute of limitations applicable to an underlying judgment and to writs of garnishment that had been entered against him. The chancellor determined that the statute of limitations had run and ordered that the judgment, the writs of garnishment, and the writs of execution be deemed null and void. Debbie West appealed, and this Court consolidated the two cases.

## STATEMENT OF THE FACTS

### A)    BACKGROUND

¶3.    In July 1979, Tim West and Debbie West were married to each other. During the time they were married, three children were born to them. In November 1994, Tim West and Debbie West divorced and incorporated a property settlement agreement into the divorce decree.

> At the time of the divorce, Tim [West] was employed by West Quality Food Services, Inc. ("West Quality"); he owned stock in West Quality and Coastal Express, Inc. ("Coastal"); and he held limited partnership interests in West Leasing Company, West Brothers Leasing Company, and West Family Leasing Company ("the West Leasing Companies"). All of these entities ("West Entities") are closely-held family businesses.

*West v. West (West II)*, 88 So. 3d 735, 738 (Miss. 2012).

### B)    PRIOR PROCEEDINGS: *West I* and *West II*

¶4.    This case has been before this Court on two prior occasions. The relevant facts regarding *West I* are as follows:

> Over five years after the divorce, Tim stopped paying what was due pursuant to the property settlement agreement. Debbie then filed a contempt proceeding.

3

Tim argued that the alimony and division of marital assets provisions in the property settlement agreement were ambiguous.

. . . .

After a trial on the controversial provisions, the chancery court entered its judgment, finding certain provisions of the agreement were conflicting and confusing, that it was unable to resolve the differences, that there was no meeting of the minds between the Wests as to the alimony provision of the agreement, and that, in the absence of an agreement between the parties, the issue should be presented anew to the court.

Tim filed a Motion for Amendment to Judgment, to Make Additional Findings, and/or for a New Trial on Certain Issues. Debbie then filed a Motion for Entry of Findings and Conclusions, to Alter or Amend Judgment or, Alternatively, for a New Trial. Debbie then filed a Motion for Certification Pursuant to M.R.C.P. 54(b), Alternatively, for Leave to File an Interlocutory Appeal Pursuant to M.R.A.P. 5. The chancery court issued an interlocutory order denying Debbie's Motion for Rule 54(b) Certification, her Motion for Interlocutory Appeal, and Tim's Motion for a New Trial. The trial court also stated in its interlocutory order that the provisions in question were "unconscionable, constitute[d] illegal escalation clauses, [were] incapable of understanding, and [were] unenforceable due to the confusing, ambiguous, and contradictory language contained therein."

We granted Debbie's petition for permission to appeal from the interlocutory order. *See* M.R.A.P. 5.

. . . .

Debbie raise[d] six issues in her appeal. First, whether the trial court erred in voiding the alimony and division of marital assets provisions of the property settlement agreement. Second, whether the trial court erred in failing to determine that $411,000 in corporate loans made to Tim were distributions to which Debbie was entitled under the property settlement agreement. Third, whether the trial court erred in failing to determine that Tim breached his obligation to Debbie under their pre-divorce death benefit agreement. Fourth, whether Debbie [was] entitled to attorneys fees for the contempt action and subsequent appeal. Fifth, whether the trial court lacked jurisdiction to determine alimony and division of marital assets anew in the absence of the parties' voluntary written consent. And sixth, whether the trial court erred in

4

granting Tim's motion to quash Debbie's subpoenas of West Quality documents.

*West v. West (West I)*, 891 So. 2d 203, 207-10 (Miss. 2004) (footnotes omitted). The Court reversed and remanded the chancellor's decision. *Id.* at 219. Regarding the division of marital assets, we found that

> the general purpose of the agreement was for Tim to provide one-half of his various forms of income to Debbie, regardless of their marital status to each other or to a third party. As to marital property, the agreement states that Debbie is entitled to one-half of all existing marital assets, including, but not limited to, stocks, limited partnerships, and business assets. This provision clearly manifests an intent that Tim and Debbie equally share all marital assets.

*Id.* at 211. We found also that the property settlement agreement awarded Debbie West periodic alimony. *Id.* at 212-13. Additionally in *West I*, this Court declined to address "whether the $411,000.00 was a loan or distribution" and reversed the

> chancellor's decision to quash [Debbie West's] subpoenas duces tecum and remand to the trial court with instructions that it reconsider the motion to quash and rule as to each of the twenty-nine categories of financial information, granting Debbie [West] access to those documents revealing financial information (including any corporate documents relating to distribution or salary) which would positively or negatively affect her agreed entitlement to Tim [West]'s various forms of income.

*Id.* at 219. The Court declined to address Debbie West's arguments regarding the death benefit agreement and the attorneys' fees. *Id.* at 214.

¶5.     After this Court's findings in *West I*, the case was remanded to the Chancery Court of the First Judicial District of Jones County, in which the following occurred:

> After we remanded, Debbie filed an amended complaint, adding the West Entities as defendants, claiming they had conspired with Tim to deprive her of her portion of distributions to Tim by disguising the distributions as "loans" from Coastal Express and West Quality. Following extensive

5

discovery, the chancellor dismissed the West Entities as parties and, finding Debbie had no reasonable basis to pursue a claim against West Entities, ordered Debbie to pay their attorneys' fees.

At the conclusion of the trial, the chancellor issued an extensive, fifty-two-page opinion and final judgment, in which he found that:

. . . .

2) Debbie was entitled to one-half of the marital assets; that the law of the case prohibited Tim from relitigating what this Court already had decided; and that Debbie was entitled to a one-half interest in the West Entities, but only if certain transfer restrictions contained in the West Quality stock agreement were lifted;

. . . .

4) the money transferred from West Quality to Tim was in the form of loans and not distributions;

. . . .

6) Tim breached his duty to keep Debbie informed about financial information, and he must provide Debbie with certain financial documents;

. . . .

12) Debbie was entitled to attorneys' fees totaling $262,468.53; and

. . . .

From the chancellor's order, both Tim and the West Entities appealed, and Debbie cross-appealed.

*West II*, 88 So. 3d at 739.

¶6.    While the appeal concerning the chancellor's order was pending, in November 2008, "Debbie attempted to collect her judgment for past-due alimony and attorneys' fees by filing

6

a writ of execution on Tim's distributions from, and shares of stock in, West Quality and

Coastal."[1] *Id.* at 740.

> Rather than responding to the writ with a sworn statement setting forth the
> value of Tim's "stock, shares, or interest" as required by [Mississippi Code
> Section 13-3-129 (Rev. 2002)], West Quality and Coastal filed motions to
> quash the writs. Tim filed a motion to stay the writs, and for an injunction,
> claiming that his stock was "subject to liens of the corporation, and restrictions
> on transfer."

*Id.* at 745 (footnote omitted). "The chancellor stayed the writ of execution and requested

briefs on the effect of the restrictions." *Id.* at 740.

> But a few days before [Tim West's] brief was due, Tim sold his West Quality
> and Coastal stock back to the respective companies. Rather than paying Tim
> the $1,552,804 purchase price for its stock, West Quality applied $1,172,205
> to satisfy Tim's loans and other debts to the company, and gave him a
> promissory note for the $380,599 balance. Coastal gave Tim a promissory note
> for the entire $87,953 purchase price of its stock. Then, rather than providing
> briefs on the question of whether Debbie could execute on restricted stock,
> West Quality and Coastal filed answers to Debbie's writ of execution,
> claiming the writs were mooted by their purchases of Tim's stock.

*Id.* at 745.

¶7.     The chancellor held a hearing on the matter and entered an order, finding "that the

motion to quash the writ of execution was moot because"

> the Court nullified and abated the subject Writs of Execution in its order,
> entered December 1, 2008. Accordingly, the subject property at issue in the
> Writs of Execution was free from any encumbrance resulting from the Writs
> of Execution at the time the stock transfer occurred, and [West Quality and
> Coastal] were free to acquire the stock at issue under the transactions of
> February 1, 2009.

---

[1]After the remand of *West I*, a judgment was entered in Debbie West's favor on May
9, 2008, in which the chancellor awarded $570,792 in past-due alimony and simple interest
at 7 percent per year and $262,468.53 in attorneys' fees.

*Id.* (alteration in original). Debbie West appealed that decision. *Id.* at 740. The *West II* Court consolidated the appeals. *Id.*

¶8.    The *West II* Court found that "[t]he chancellor did not err in finding that Debbie West was entitled to one-half of all distributions paid to Tim West." *Id.* at 741. The Court reasoned that

> Tim cannot credibly argue that he did not intend to transfer to Debbie an equitable interest in all of the business interests he held at the time the agreement was signed. These business interests included his stock and his ownership in the limited partnerships. An equitable title provides a "beneficial interest" in property, meaning an interest in the benefits. A "beneficial interest" can be nothing less than an interest in the benefits. And since distributions to stockholders and owners are a benefit, we cannot say the chancellor was manifestly wrong in holding that Debbie was entitled to her share of the distributions.

*Id.* at 742. (footnotes omitted). The Court found also that "[t]he chancellor did not err in failing to void the provisions of the Agreement concerning Debbie's interest in Tim's stock due to the shareholder and partnership restrictions on transfer agreements." *Id.* Again the Court reasoned that:

> We have carefully reviewed Debbie's arguments before the trial court, her writs of execution, and her briefs before this Court; and we do not find that she attempted to acquire title to, nor place a lien on, Tim's stock. Instead, she claims her equitable interest in the stock entitles her to share in the benefit. . . .
>
> The Agreement clearly recognized that Tim would remain the legal owner of the stock, but it just as clearly announced Tim's intent to grant Debbie half of every benefit that resulted from his ownership interests in the businesses. This is consistent with the Agreement's specific language: "Husband acknowledges, and it is the intention of both parties, to make a present transfer to Wife of a one-half (1/2) vested equitable ownership interest in said properties as a division of marital assets, while married . . . ." The

8

chancellor found this agreement to be reasonable when he granted the divorce and incorporated the property-settlement agreement into the decree.

. . . Because Debbie's claim is to an equitable interest in—not legal title to—Tim's stock and business interests, we hold that Tim's transfer of an equitable interest in his business holdings was valid, binding, and enforceable; and this issue is without merit.

*Id.* at 742-43 (second alteration in original). The *West II* Court affirmed the chancellor's "finding that the loans and '113 account' advances to Tim were legitimate loans." *Id.* at 748.

¶9.    Regarding Debbie West's appeal concerning her writ of execution on Tim West's stocks, the Court determined that the chancellor had erred by finding that the stock sale had mooted her writ of execution. *Id.* at 744. "It is uncontested that, when she served the writs of execution on West Quality and Coastal, Debbie held a valid, enrolled judgment against Tim for which no supercedeas bond was filed. So at the time the writs were served, Debbie was a judgment creditor." *Id.* at 746. As a result, the Court determined that this was "a matter of the law of priority of liens[,]" which had not been addressed by the trial court. *Id.* The Court also pointed out West Entities' failure to abide by its statutory duty to deliver "a written statement in writing, under oath, of the particulars demanded by the officer, and of the value of the defendant's stocks, shares, or interest . . . ." *Id.* (alteration in original) (internal quotation marks omitted) (quoting Miss. Code Ann. § 13-3-129 (Rev. 2002)). The Court remanded this issue to the chancellor to apply the law of priority of liens. *Id.* The *West II* Court held also that "[t]he parties may present to the chancellor—for a decision on the merits—any issue not specifically resolved by this opinion." *Id.* at 747.

9

## C)    FACTS SINCE *WEST II*

¶10.    After the case was remanded in ***West II***, Tim West filed a "Motion to Amend Answer and Defenses," in which he asserted a counterclaim for child support. His motion to amend was granted. Tim West filed also a "Motion to Vacate and Cancel Judgment," attempting to vacate the judgment that had been entered in Debbie West's favor on May 8, 2008, which was the basis of the writ of garnishment.[2] The chancellor blocked the parties' attack on Debbie West's writ of garnishment and denied the motions.

¶11.    A trial was conducted from October 7 to October 9, 2014. But the trial did not conclude until December 10, 2015. West Entities argued that its lien had priority over any of Debbie West's interests because the bylaws of both corporations had a first-lien provision. Debbie West argued that her two potential interests, the 1994 equitable interest from the property settlement agreement and the 2008 judgment lien, had priority over West Entities' interest.

¶12.    On June 29, 2020,[3] the chancellor determined that "[t]he West Entities['] bylaws created security interests in the corporate stock beginning in 1971 and 1987 to secure the repayment of the stockholders' indebtedness to the corporations[,]" meaning that "[t]he West

---

[2]The record suggests that West Entities also attacked the writ of garnishment by filing a motion to dismiss the writs of execution. But the voluminous record does not contain the motion itself. The motion is referenced only in the Debbie West's response and in the chancellor's order itself.

[3]Neither party challenges the validity of the final judgment, notwithstanding the extraordinary time gap between the hearing and the entry of the chancellor's decision.

Entities' security interests in Tim's stock attached prior to Tim and Debbie's 1994 divorce proceeding and the May 2008 judgment against Tim." The chancellor explained that

> Tim's stock certificates were certificated securities, registered to Tim. A debtor with rights in a certificated security delivers the security when a secured party acquires possession of the security certificate. Miss. Code Ann. § 75-8-301. A person or entity gives value in exchange for rights under Article 9 when the rights are acquired in return for an extension of credit (or immediately available credit) or in return for any consideration sufficient to support a contract. The West Entities gave value to Tim in the form of an available extension of credit, and Tim pledged his rights in the stock in exchange for the credit and to secure his repayment obligations. The West Entities always maintained possession of the stock certificates according to both David Childress[4] and Dick West.[5] Dick West testified that the stockholders always owed money to the business and their indebtedness was secured by their stock certificates pursuant to the corporations' bylaws. Likewise, Tim testified that the West [E]ntities held his stock as collateral for any money he owed the companies. Accordingly, the West Entities' security interests in Tim's stocks were perfected prior to the 1994 divorce proceedings and the May 2008 judgment against him. Miss. Code Ann. § 75-[9]-313(e).
>
> . . . .
>
> . . . [T]he West Entities' security interests in the stock had priority over Debbie's lien at the time of the buy/sell agreements with Tim in 2009. The West Entities properly applied the sale proceeds against Tim's remaining indebtedness and issued Tim promissory notes for the balance. As a subordinate lien holder Debbie was not entitled to share in the proceeds used to credit Tim's indebtedness as partial satisfaction of the 2008 judgment according to the rules of priority of liens.

---

[4]David Childress is West Quality's chief financial officer. *See West I*, 891 So. 2d at 217.

[5]Dick West is the chief executive officer of West Entities.

Regarding Debbie West's interests, the chancellor determined that she "became a lien creditor for the first time in 2008 and never obtained possession of the stock certificates[,]" which meant that her interest was secondary to West Entities' security interests in the stock.[6]

¶13. Tim West filed a motion for a new trial or to alter and amend the judgment for reconsideration and to amend findings of fact and conclusions of law pursuant to Rules 52 and 59 of Mississippi Rules of Civil Procedure. On October 5, 2020, however, an agreed final order was entered, granting Tim West leave to withdraw his previous motion and allowing the parties to file a notice of appeal. On October 27, 2020, Debbie West filed her notice of appeal. The same day Tim West filed his notice of cross-appeal.

### D)    FACTS IN THE CONSOLIDATED APPEAL, NO. 2022-CA-00147-SCT

¶14. On September 3, 2020, Tim West filed a complaint[7] for a declaratory judgment in the Circuit Court of the Second Judicial District of Jones County, Mississippi, seeking to have the court declare that "[t]he judgment entered on May 9, 2008 has expired and is null and void" and "[t]he Writs of Execution, Writs of Garnishment, and Charging Orders have expired and are null and void because the judgment upon which they are issued [is] null and void." In response, Debbie West filed a motion to dismiss or, in the alternative, for transfer to chancery court, arguing that

---

[6]Chancellor Franklin McKenzie retired a short time after this case concluded in chancery court. He was replaced by Chancellor Billie Graham, who promptly entered an order of recusal. As a result of Chancellor Graham's recusal, this Court appointed Honorable Ronald Doleac as a special chancellor to preside over the case.

[7]This complaint was filed sixty-six days after the chancellor's final order in the original, already filed West case (*West III*). This complaint was filed also fifty-four days prior to both parties' filing their notices of appeal in *West III*.

[t]his action should be dismissed for the following reasons . . . this [c]ourt lacks jurisdiction over the 2008 Judgment, which was entered in the Chancery Court Case, which is still open and pending, and the rule of priority of jurisdiction dictates that Tim's claim for declaratory relief should be heard in the Chancery Court Case, which was filed before this case.

In the alternative, . . . this case should be transferred to the Chancery Court of the First Judicial District of Jones County, Mississippi as the Chancery Court Case was the first case filed, Tim and Debbie are both the only parties in the Chancery Court Case and this case, the 2008 Judgment and the validity thereof is part of the same controversy at issue in the Chancery Court Case, and the Chancery Court and the Circuit Court have concurrent jurisdiction over declaratory actions.

On January 7, 2021, an agreed order was entered transferring the case to the Chancery Court of the First Judicial District of Jones County, Mississippi.[8] But when the case was transferred to chancery court, it was not consolidated with *West III*.

¶15.    On November 9, 2021, Tim West filed a Motion for Summary Judgment, arguing that the writs of garnishments were null and void because the judgment that was entered on May 9, 2008, expired on May 9, 2015, due to Debbie West's failure to renew the 2008 judgment. In response, Debbie West argued that the trial court should deny summary judgment because:

1.      . . . [this court] lacks jurisdiction to make determinations or declarations concerning the judgment at issue herein based on priority of jurisdiction. . . .

2.      . . . there are genuine issues of material fact in dispute concerning whether the judgment at issue herein and the writs and orders filed and served to collect on such judgment have expired or are unenforceable or whether they have been stayed or tolled as a result of orders granting

---

[8]When the case was transferred to chancery court, the originally assigned chancellor, Honorable Billie Graham, recused. This Court appointed Honorable Franklin McKenzie as special chancellor to preside over the matter. Chancellor McKenzie had presided over *West I*, *West II*, and most of *West III* before retiring.

13

a stay or ongoing litigation and appeals concerning the judgment at issue herein or the collection of such judgment.

¶16. On January 18, 2022, the chancellor entered a final judgment granting Tim West's motion for summary judgment. The chancellor determined that "the Judgment rendered on May 9, 2008 in favor of [Debbie West] against [Tim West] became expired on May 9, 2015 by operation of the statute of limitations, and consequently, the [c]ourt orders, adjudges, and decrees that said Judgment is hereby null and void." As a result, the chancellor expunged the 2008 judgment from the judgment roll and ordered that "any writs of garnishment, writs of execution, and charging orders founded and issued on the Judgment rendered on May 9, 2008 are likewise null and void and are hereby terminated as to any property that came into the hands of [Tim West] after May 9, 2015."

¶17. Debbie West filed a timely notice of appeal on February 15, 2022. This Court entered a show cause order, asking the parties to show cause why this case should not be consolidated with *West III* for the purpose of judicial economy and consistency. Order, *West v. West*, No. 2020-CA-01206-SCT (Miss. Nov. 21, 2022). Neither party responded. On December 6, 2022, this Court entered an order consolidating these two cases. Order, *West v. West*, No. 2020-CA-01206-SCT (Miss. Dec. 6, 2022).

## ISSUES ON APPEAL

¶18. The issues on direct appeal are:

1)      Whether the trial court erred by determining that West Entities' security interests have priority over Debbie West's interests.

14

2) Whether West Entities' failure to comply with Mississippi Code Section 13-3-129 entitled Debbie West to a judgment against West Entities for the full amount owed on the judgment dated May 9, 2008.

¶19. On cross-appeal, the issue is:

1) Whether the trial court erred by failing to address Tim West's claim for past due child support.

¶20. In the consolidated case, No. 2022-CA-00147-SCT, the issues are:

1) Whether the trial court lacked jurisdiction in this case.

2) Whether the chancellor erred by granting summary judgment.

## STANDARD OF REVIEW

¶21. "This Court reviews questions of law *de novo*, and it reviews the factual findings of the chancery court under an abuse of discretion standard." ***Cmty. Tr. Bank of Miss. v. First Nat'l Bank of Clarksdale***, 150 So. 3d 683, 687 (Miss. 2014) (citing ***Tomsche v. Fort (In re Est. of Mason)***, 616 So. 2d 322, 327 (Miss. 1993)).

## DISCUSSION

**I) DIRECT APPEAL**

**A) Whether the trial court erred by determining that West Entities' security interests have priority over Debbie West's interests.**

¶22. The chancellor determined that the relative interests of West Entities had priority over Debbie West's because the West Entities' bylaws created security interests in the corporate stock owned by Tim West, and those interests had attached prior to the origin of any interest of Debbie West. Debbie West argues that the West Entities' bylaws were insufficient to create a security interest with first lien status. She argues also that she has priority over any

15

West Entities' interests either by the 1994 property settlement agreement or by the 2008 judgment lien. West Entities argues that its interest, *i.e.*, "West Entities' secured interest for loans made to Tim[,]" had attached and had been perfected before either of Debbie West's alleged interests. West Entities asserts that since its interest has priority, the trial court correctly applied the proceeds of the stock sale.

¶23. The chancellor determined that Article 9 of the Mississippi Uniform Commercial Code governed because the "bylaws created security interests in the corporate stock beginning in 1971 and 1987 to secure the repayment of the stockholders' indebtedness to the corporations." Section 75-9-322 determines priority in conflicting security interests:

    (a)    Except as otherwise provided in this section, priority among conflicting security interests and agricultural liens in the same collateral is determined according to the following rules:

        (1)    Conflicting perfected security interests and agricultural liens rank according to priority in time of filing or perfection. Priority dates from the earlier of the time a filing covering the collateral is first made or the security interest or agricultural lien is first perfected, if there is no period thereafter when there is neither filing nor perfection.

        (2)    A perfected security interest or agricultural lien has priority over a conflicting unperfected security interest or agricultural lien.

        (3)    The first security interest or agricultural lien to attach or become effective has priority if conflicting security interests and agricultural liens are unperfected.

    (b)    For the purposes of subsection (a)(1):

>    (1)    The time of filing or perfection as to a security interest in collateral is also the time of filing or perfection as to a security interest in proceeds; and
>
>    (2)    The time of filing or perfection as to a security interest in collateral supported by a supporting obligation is also the time of filing or perfection as to a security interest in the supporting obligation.

Miss. Code Ann. § 75-9-322(a)-(b) (Rev. 2016).

¶24.    There are five interests at issue in this case: those found in West Entities' bylaws, the 1994 property settlement agreement, the 2000 and 2009 security agreements, and the 2008 judgment lien.[9]

### 1)    West Entities' Bylaws

¶25.    The bylaws for West Quality were adopted in 1971, and the bylaws for Coastal Express were adopted in 1987. Both West Quality and Coastal had the following provision in its bylaws:

>    The corporation shall have first lien on all shares of its capital stock, and upon all dividends declared upon the same, for any indebtedness of the respective holders thereof to the corporation.

---

[9]In its brief, West Entities asserts that "[t]here are three competing liens or interests—Debbie's judgment lien, Debbie's 'equitable interest' or 'equitable line,' and the West Entities' secured interest for loans made to Tim." In Debbie West's brief, she discusses the 1994 property settlement agreement, West Entities' bylaws, the 2008 judgment lien, the 2000 security agreement between Tim West and West Quality, and the 2009 security agreement between Tim West and Coastal.

¶26.    West Entities argues that Tim West's stocks are certificated security[10] interests, which

had attached and perfected pursuant to Mississippi Code Sections 75-9-203 and -313(a) (Rev.

2016). Code Section 75-9-203 provides, in relevant part, that

> (b)    Except as otherwise provided in subsections (c) through (i), a security interest is enforceable against the debtor and third parties with respect to the collateral only if:
>
> > (1)    Value has been given;
> >
> > (2)    The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
>
> (3)    One (1) of the following conditions is met:
>
> . . . .
>
> (C)    The collateral is a certificated security in registered form and the security certificate has been delivered to the secured party under Section 75-8-301 pursuant to the debtor's security agreement[.]

Miss. Code Ann. § 75-9-203(b) (Rev. 2016). Additionally, Section 75-9-313(a) states, in

relevant part, that "[a] secured party may perfect a security interest in certificated securities

by taking delivery of the certificated securities under Section 75-8-301." Miss. Code Ann.

§ 75-9-313(a) (Rev. 2016). West Entities asserts that its bylaws' provision accomplished

exactly what it declared, which was to "create and provide for a security interest, a lien on

shareholder's shares for any indebtedness of the shareholder."

¶27.    West Entities asserts that it satisfied the value requirement. In its brief, West Entities

cites Mississippi Code Section 75-1-204 to define *value* as "a person gives value for rights

---

[10]Mississippi Code Section 75-8-102(a)(4) has defined *certificated security* to "mean[] a security that is represented by a certificate." Miss. Code Ann. § 75-8-102(a)(4) (Rev. 2016).

if the person acquires them: (1) [i]n return for a binding commitment to extend credit or for the extension of immediately available credit[;] . . . [or] (4) [i]n return for any consideration sufficient to support a simple contract." Miss. Code Ann. § 75-1-204 (Rev. 2016). According to West Entities, the value given here was "in the form of an available extension of credit" to Tim West, to which he "pledged the rights to the stock in exchange for the credit and to secure his repayment obligation." Regarding whether value had been given, the chancellor determined that:

> A person or entity gives value in exchange for rights under Article 9 when the rights are acquired in return for an extension of credit (or immediately available credit) or in return for any consideration sufficient to support a contract. The West Entities gave value to Tim in the form of an available extension of credit, and Tim pledged his rights in the stock in exchange for the credit and to secure his repayment obligations. The West Entities always maintained possession of the stock certificates according to both David Childress and Dick West. Dick West testified that the stockholders always owed money to the business and their indebtedness was secured by their stock certificates pursuant to the corporations' bylaws. Likewise, Tim testified that the West [E]ntities held his stock as collateral for any money he owed the company.

¶28. With respect to the perfection requirement, West Entities cites Section 75-9-313(a) to support its position that, since its capital stock was a certificated security, perfection was accomplished "by taking delivery of the certificated securities under Section 75-8-301." Thus, West Entities claims attachment and perfection were met by its possession of Tim West's stock certificates.[11]

---

[11]Also, West Entities asserts that its priority "governs distribution of the proceeds of the sale of Tim's stock." As such, West Entities purchased Tim West's shares, "deducted the loans that Tim owed, and [it] gave promissory notes to Tim for the net proceeds of both sales[,]" which are being paid to Debbie West via the writs of garnishment under the terms of the promissory notes. In her brief, Debbie West concedes that since the remand of *West*

¶29. Debbie West asserts that the corporations' bylaws failed to create a priority lien because it was not delivered "pursuant to the debtor's security agreement[.]" She argues that there is nothing in the record that demonstrates that the security interest was given for value at the time of its creation, nor was there a future advance clause, *i.e.*, dragnet clause, included. She cites Mississippi Code Section 75-9-203(b)(3)(C) to support her argument that the bylaws do not mention that West Entities "is to retain Tim's stock for the purpose of securing Tim's debt."

¶30. Despite interesting arguments from both parties, this case comes down to the question of whether a corporation can create a lien interest in its bylaws. And if so, was the lien created properly?

¶31. *Fletcher Cyclopedia of the Law of Corporations*, states:

> It is well settled under common law that a corporation has no lien upon its shares of stock for debts owed to it by shareholders. Thus, if there is no provision in the . . . bylaws . . . creating a lien on shares, a corporation cannot recover against a bona fide purchaser of the shares, whether its claim is based upon the balance due on the shares or a loan or other indebtedness, notwithstanding any claim it may have against the transferor.

11 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Corporations* § 5261, Westlaw (database updated Sept. 2023). Further,

> [a] corporation may create a lien upon its shares for indebtedness of shareholders pursuant to . . . [its] bylaws, if the right to the lien is noted conspicuously on the certificate. . . . Since the terms appear upon the certificate, a purchaser is charged with notice and must ascertain whether the shares are subject to a lien.

---

*II*, she has "garnished and received payments from [West Entities] of the payments that would otherwise have been due to Tim on the aforementioned promissory notes."

*Id.* § 5265 (footnotes omitted).

¶32.    The case of **Bank of Holly Springs v. Pinson**, 58 Miss. 421 (1880), is similar to the one before us. In **Pinson**, the Court was faced with the question of "whether [Pinson] . . . , under its charter and by-laws, and the certificates of stock involved in this controversy, has a lien on the stock as against the [Bank of Holly Springs]." *Id.* at 433. The bank had refused to transfer to Pinson stock certificates that had been assigned to the Crumps, who were indebted to the bank. *Id.* at 434-35. According to the bylaws of the corporation, a lien had been placed upon the stocks. *Id.* at 434. The bylaws provided the following:

> "the stock of the company shall be assignable only on the books of the company; and a transfer-book shall be kept, in which all assignments and transfers of stock shall be made, and no transfer of the stock of the association shall be made by any stockholder who shall be liable to the company for any sum of indebtedness, either as principal or otherwise, *and certificates of stock shall contain upon them notice of this provision.*" . . . "[C]ertificates of stock, signed by the president and cashier, may be issued to stockholders, and the certificates shall state on their face that the stock is transferrable only upon the transfer-books of the company; and when stock is transferred, the certificates thereof shall be returned to the company and cancelled, and new certificates issued."

*Id.* at 434. The **Pinson** Court recognized that "at common law a corporation has no lien on the stock of its shareholders for an indebtedness to it." *Id.* at 435. But if such a lien is to exist, it must "result either from a provision in the charter to that effect, or from a by-law[.]" *Id.* The Court noted that a lien created by a corporation's charter "is notice to all persons dealing with the company[,]" *id.* (citing **Union Bank v. Laird**, 15 U.S. 390, 4 L. Ed. 269 (1817)), but it found differently for liens created by a corporation's bylaws. *Id.* at 435-36. Regarding the influence of bylaws, the Court stated:

21

By-laws of private corporations are not in the nature of legislative enactments, so far as third persons are concerned. They are mere regulations of the corporation for the control and management of its own affairs. They are self-imposed rules, resulting from an agreement or contract between the corporation and its members to conduct the corporate business in a particular way. They are not intended to interfere in the least with the rights and privileges of others who do not subject themselves to their influence. It may be said with truth, therefore, that no person not a member of the corporation can be affected in any of his rights by a corporate by-law of which he has no notice. In some instances, as we have seen, if he have no actual notice he will be held to have constructive notice.

*Id.* The Court determined that Pinson had neither actual nor constructive notice because the corporation's charter limited only the mode and manner of transferring the stock, and there was no information on the face of the certificate referencing the bylaws or the restriction in the bylaws. *Id.* at 437-38. As a result, the Court held that there was no valid lien. *Id.* 437-39.

¶33.    Based upon ***Pinson*** and *Fletcher*, in order for the lien to have been valid, Debbie West must have had either actual or constructive notice of the restriction contained in West Entities' bylaws. In her brief, Debbie West argues that she did not have "actual or constructive knowledge of the purported security interest." She asserts that "there was nothing registered in any public office in the world which gave actual or constructive notice to [her] that the West Entities claimed a security interest in Tim [West's] stock."

¶34.    Upon review of the extensive record in this case, this Court located several stock certificates. Some of the stock certificates issued by West Entities state explicitly: "transferable only on the books of the corporation by the holder here of in person or duly authorized attorney on surrender of this certificate properly endorsed." According to *Fletcher*, "[c]ourts have held that a certificate recital where the shares are transferable only

22

on the books of the corporation, or only at the office of the corporation, is not adequate notice and, therefore, does not create a valid lien." Fletcher, *supra*, § 5265 (footnotes omitted). In Georgia, an appellate court determined that

> "The mere fact that a certificate of stock in a corporation embraced a recital that the same was transferable in person or by attorney only on the books of the company on surrender of this certificate did not ipso facto give to the corporation any lien upon such stock." [**Buena Vista Loan & Sav. Bank v. Grier**, 40 S.E. 284 (Ga. 1901)]. In order to give a lien to the corporation on its shares of stock for claims which it has against the shareholder, notice of the by-law or charter provision creating the lien must be printed on the face of the certificate. Unless this is done, an innocent purchaser of the certificate, who takes it by indorsement without notice of a claim of the corporation, gets an unincumbered title. **Bank of Culloden v. Bank of Forsyth**, 120 Ga. 575, 48 S.E. 226, 102 Am. St. Rep. 115; **Sylvania Railroad v. Hoge**, 129 Ga. 742, 59 S.E. 806; 10 Cyc. 580.

**Hardy v. Boyer**, 67 S.E. 205, 206-07 (Ga. Ct. App. 1910). Additionally, *Fletcher* observes that the same is true under the UCC:

> Under the Uniform Commercial Code, a lien upon a certificated security in favor of an issuer is valid against a purchaser only if the right of the issuer to such lien is noted conspicuously on the certificate. A restriction on transfer of a certificated security imposed by the issuer, even if otherwise lawful, is ineffective against any person without actual knowledge of it unless the restriction is noted conspicuously on the certificate.

Fletcher, *supra*, § 5262.10 (footnotes omitted). This is supported by Mississippi Code Section 75-8-209, which provides that "[a] lien in favor of an issuer upon a certificated security is valid against a purchaser only if the right of the issuer to the lien is noted conspicuously on the security certificate." Miss. Code Ann. § 75-8-209 (Rev. 2016).

¶35.    Nonetheless, the record contains other stock certificates issued by West Entities that did note a restriction of some sort on the face of the certificate. But due to the poor condition

23

of the copies of the certificates submitted in the record, we could not determine the exact content of the restriction on each certificate. Also, this Court is not confident that all of the relevant stock certificates in this case are present in the record. Due to the extensive record and because some of the stock certificates are not entirely legible, we find that this issue should be remanded to the trial court for its determination of whether any of the stock certificates at issue contain conspicuous notations of the lien restrictions contained in the West Entities' bylaws.

¶36. We find also that it is unclear whether Debbie West had actual or constructive notice of West Entities' claim of priority via the corporations' bylaws. Therefore, the trial court abused its discretion by determining that the West Entities' bylaws created an interest with priority over all other interests. This Court remands this issue for further consideration by the trial court consistent with this opinion.

### 2) The 1994 Property Settlement Agreement

¶37. If some or all of the stock certificates contain such notations, then West Entities may have the priority lien because the bylaws were the earliest perfected security interest. *See* Miss. Code Ann. § 75-9-322 (Rev. 2016). If the bylaws restriction is not conspicuously noted on the stock certificates, however, the next possible interest in time appears to be Debbie West's 1994 equitable lien.

¶38. The trial court determined that "[t]he West Entities' security interests in Tim's stock attached prior Tim and Debbie's 1994 divorce proceedings" and that "Debbie became a lien creditor for the first time in 2008 and never obtained possession of the stock certificates."

24

Debbie West disagrees and asserts that she has priority lien via the 1994 property settlement agreement (PSA), which she contends this Court already has validated. West Entities asserts that "[w]hile the PSA refers to an 'equitable lien,' this Court in *West II* confirmed that Debbie did not attempt to acquire title to or 'place a lien' on Tim's stock."

¶39.    In *West II*, this Court recognized that the 1994 PSA contained a provision, to which Tim West had agreed and the chancellor had approved:

> It is the intention of the Husband and the Wife to benefit and to share equally the employment and business income of Husband. . . . Husband acknowledges, and it is the intention of both parties to make a present transfer to Wife of a one-half (1/2) vested equitable ownership interest in said properties [referring to marital assets, including, but not necessarily limited to, stocks, limited partnerships and business assets] as a division of marital assets, while married, and this Agreement constitutes an *existing equitable lien* to the Wife of one-half (1/2) of said properties.

*West II*, 88 So. 3d at 741-42 (alterations in original). The Court recognized also that the portion of the PSA concerning the property settlement "was not ambiguous." *Id.* at 739 (citing *West I*, 891 So. 2d at 212).

¶40.    One of the many arguments in *West II* was that "because of transfer restrictions, the chancellor should have voided the Agreement's provisions that purported to transfer to Debbie an interest in his stock." *Id.* at 742. The Court wrote that

> We have carefully reviewed Debbie's arguments before the trial court, her writs of execution, and her briefs before this Court; and we do not find that she attempted to acquire title to, *nor place a lien on*, Tim's stock. Instead, she claims her equitable interest in the stock entitles her to share in the benefit. . . .
>
> The Agreement clearly recognized that Tim would remain the legal owner of the stock, but it just as clearly announced Tim's intent to grant Debbie half of every benefit that resulted from his ownership interests in the

25

businesses. This is consistent with the Agreement's specific language: "Husband acknowledges, and it is the intention of both parties, to make a present transfer to Wife of a one-half (1/2) vested equitable ownership interest in said properties as a division of marital assets, while married. . . ." The chancellor found this agreement to be reasonable when he granted the divorce and incorporated the property-settlement agreement into the decree.

Tim now argues that the provision is void because his stock was restricted. But he provides us no reason why the restricted nature of his stock prevents him from dividing the financial benefits of the stock with whomever he pleases. Because Debbie's claim is to an equitable interest in—not legal title to—Tim's stock and business interests, we hold that Tim's transfer of an equitable interest in his business holdings was valid, binding, and enforceable; and this issue is without merit.

*Id.* at 742-43 (second alteration in original).

¶41. This Court was mistaken in *West II* when it found that Debbie West had not attempted to place a lien on Tim West's stock. We have defined *equitable lien* as

when created by contract, is the right by which a creditor is entitled to obtain satisfaction of his debt by resort to specified property belonging to the debtor, and no particular form of expression is necessary in such a contract so long as it is clear that the debtor intended to create an encumbrance.

*Lindsey v. Lindsey*, 612 So. 2d 376, 379 (Miss. 1992) (quoting *Pincus v. Collins*, 198 Miss. 283, 22 So. 2d 361, 362 (1945)); *see also* *Hollis & Ray v. Isbell*, 124 Miss. 799, 87 So. 273, 274 (1921) ("All liens are created by law or by contract of the parties." (internal quotation mark omitted) (quoting 3 R.C.L. 133, § 55)). This Court has recognized that

Characteristic of equitable liens is that they are not estates or property in the thing itself, nor are they rights to recover the thing, that is they are not rights which may be the basis of a possessory action. They are merely a charge on property for the purpose of security, and are ancillary to and separate from the debt. They are neither debts nor rights of property, but merely remedies for a debt. Of extreme importance is the fact that such liens do not divest the debtor of title or possession. *See* 51 Am. Jur. 2d *Liens* § 23 (1970).

26

*Lindsey*, 612 So. 2d at 380.

¶42.   In *West II*, the Court found that Debbie West did not receive legal title to Tim West's stock. *West II*, 88 So. 3d at 742-43. Instead she received "an equitable interest in Tim's stock . . . as they existed at the time the Agreement was signed." *Id.* at 742. While the Court did recognize Debbie West's equitable interest in Tim West's stock, it stopped short of noting that the equitable interest was preserved by a contract that contained an equitable lien, the purpose of which was to protect that interest. "[A] property settlement agreement is a contractual obligation." *Harris v. Harris*, 988 So. 2d 376, 378 (Miss. 2008) (citing *East v. East*, 493 So. 2d 927, 931-32 (Miss. 1986)). The PSA provides clearly that it creates an equitable lien in favor of Debbie West for one-half of the marital properties, which includes Tim West's corporate stock. *West II*, 88 So. 3d at 742. Debbie West acquired an equitable lien when the signed contract, *i.e.*, the PSA, was approved by the chancellor.

¶43.   In its brief, West Entities argues that "[e]ven if her equitable interest in Tim's stock could be construed as a lien, Debbie could only become a 'lien creditor' with respect to the PSA by executing on it." It asserts that Debbie West did not execute or enroll the PSA on the county judgment roll.

¶44.   We find that, unlike a judgment lien, nothing mandates that an equitable lien, especially one arising from a contract, must be enrolled in a county judgment roll. The Mississippi Court of Appeals has embraced the Colorado Supreme Court's reasoning in *Leyden v. Citicorp Industrial Bank*, 782 P.2d 6, 12 (Colo. 1989), that held "[a]n equitable lien is good as against all persons who acquired an interest with knowledge or notice of [a]

27

plaintiff's equitable lien . . . ." ***Telecom Tower Grp., LLC v. Honeysuckle Creek Holdings, Inc.***, 227 So. 3d 1170, 1174 (Miss. Ct. App. 2017) (alterations in original) (internal quotation marks omitted) (quoting ***Leyden***, 782 P.2d at 12). The Court of Appeals recognized also that "'[n]otice,' in the context of an equitable lien[,] . . . is notice of the facts giving rise to the lien[,] . . . and 'a person has notice of facts giving rise to a [lien] if he knows the facts *or should know them*.'" ***Id.*** (alterations in original) (quoting ***Leyden***, 782 P.2d at 12). West Entities either knew or should have known of the provision in the PSA that gave Debbie West an equitable lien in Tim West's stocks. Specifically, Tim West was an officer of West Entities, and the PSA was kept in the West Entities' office as early as 2001. At the very least, West Entities had constructive notice of Debbie West's equitable lien. *See **Telecom Tower Grp.**,* 227 So. 3d at 1174 ("Telecom at least had constructive notice of the facts and circumstances giving rise to the equitable lien when it obtained its interest in the property."). Here, the PSA was incorporated into the chancery court's final judgment in the West's divorce case, which provided public notice.

¶45.    Regardless of this Court's misapprehension in ***West II*** regarding Debbie West's equitable lien status, the PSA is a contract between Debbie West and Tim West that expressly granted an equitable lien against Tim West's stock in favor of Debbie West. The 1994 PSA established a valid equitable lien. Thus, the trial court erred by determining that Debbie West "became a lien creditor for the first time in 2008[.]" Regarding priority of liens, Debbie West's equitable lien only will be the priority lien if the stock certificates are not noted conspicuously with the bylaws' restriction. *See* Miss. Code Ann. § 75-9-322.

28

¶46. Because the priority of liens will be determined either by the bylaws of West Entities or the equitable lien created by the 1994 PSA, this Court finds that any arguments regarding the priority of the remaining interests are irrelevant and moot. If the stock certificates are noted conspicuously, then West Entities should have the lien of priority. If not, the priority lien is Debbie West's 1994 equitable lien. Therefore, we find that the issue of priority of liens should be remanded to the trial court for further proceedings in accordance with this opinion.

**B)       Whether West Entities' failure to comply with Mississippi Code Section 13-3-129 entitled Debbie West to a judgment against West Entities for the full amount owed on the May 9, 2008 judgment.**

¶47. Debbie West believes that West Entities' failure to comply with Section 13-3-129's requirement to deliver "a statement in writing, under oath, of the particulars demanded by the officer, and of the value of the defendant's stock, shares, or interest" results in the statutory penalty, *i.e.*, the full amount owed for Debbie West's 2008 judgment.[12] West Entities disagrees. Specifically, it asserts:

> If the *West II* Court had determined that the West Entities were subject to that penalty, remand would not have been necessary. Instead, the Court remanded to determine the priority of liens for payment of the proceeds of the sale. Therefore, the issue of the statutory penalty has been decided by this Court and is not subject to review on this appeal.

---

[12]She avers also that the chancellor erred by finding that West Entities had no duty to report to her that West Entities was holding the sale proceeds. But this is a misconception by Debbie West as she fails to read the entirety of the chancellor's final judgment. While the chancellor did state, "[t]he Supreme Court remanded for this [c]ourt to determine whether the West [E]ntities had duty to report to Debbie that they were holding the proceeds from the sale and to make them available to Tim's creditors (Debbie) according to the rules of priority of liens[,]" the rest of the judgment concerned priority of liens. The chancellor did not address West Entities' duty to report. Instead, the chancellor's analysis was primarily focused on the priority of liens. He did not address Section 13-3-129's duty or its penalty.

29

¶48.    Section 13-3-129 states:

> [i]n case of the levy of an execution . . . on the stock, shares, or interest of the defendant in any corporation or joint stock company, the officer shall go to the office or principal place of business of the corporation or company, and there declare that he attaches or levies upon the stock, shares, or interest of the defendant therein at the suit of the plaintiff. The officer shall demand of any officer, agent, or clerk of such corporation or company there present, and who is not the defendant, a statement in writing, under oath, of the amount of the defendant's stock, the number of his shares, or extent of his interest in such corporation or company, and shall leave with the officer, agent, or clerk, a copy of the writ. . . . The corporation or company shall, within a reasonable time, not longer than ten days after the levy, deliver to the officer a statement in writing, under oath, of the particulars demanded by the officer, and of the value of the defendant's stock, shares, or interest, and *in case the corporation or company shall neglect or refuse to do so, or shall wilfully make any false statement thereof, such corporation or company shall be liable to the plaintiff for the full amount of the judgment or decree* . . . . The failure of the corporation or company to make such statement shall not affect the right of the officer to sell the stock, shares, or interest of the defendant.

Miss. Code Ann. § 13-3-129 (Rev. 2019).

¶49.    In *West II*, this Court recognized that West Entities was obligated under the statute to deliver a written statement regarding any particular demands made by the officer and the value of Tim West's stock, shares, or interest in West Entities. *West II*, 88 So. 3d at 746. The *West II* Court recognized also that West Entities did not deliver such a written statement, but "[i]nstead, they filed motions to quash the writs, and then purchased Tim's stock, paying in excess of $1.6 million, all of which they continued to hold during the proceedings." *Id.* The Court went on to remand the case "for the chancellor to review the facts and apply the law of priority of liens." *Id.*

¶50.    We disagree with West Entities' assertion that the issue of the statutory penalty has been decided by this Court. Neither this Court nor the trial court has addressed whether West

Entities should be subject to the statutory penalty in Section 13-3-129. While the Court in *West II* mentioned Section 13-3-129, the Court did not make a definitive ruling about whether West Entities' failure to provide a written statement entitled Debbie West to a full judgment or not. *See West II*, 88 So. 3d at 745-46. Also, this Court's decision to remand on the basis of priority of liens does not address the issue of whether the statutory penalty is applicable or not. Likewise, Mississippi case law supports not applying the harsh penalty when there has been sufficient compliance with the statute. *See Ross v. Fed. Deposit Ins. Corp.*, 261 So. 2d 471, 473 (Miss. 1972). Therefore, this Court remands this issue for the chancellor to determine whether the statutory penalty in Section 13-3-129 should be applied in this case.

## II)     CROSS APPEAL

### A)     Whether the trial court erred by failing to address Tim West's claim for past due child support.

¶51.    In *West II*, Debbie West appealed the chancellor's award of child support to Tim West. *West II*, 88 So. 3d at 739. But this Court held in *West II* that "all issues raised which are not specifically adjudicated in this opinion are remanded for presentation to the chancellor anew." *Id.* at 747. On remand, in November 2013, Tim West filed an Answer to Amended Complaint for Citation for Contempt, Declaratory Judgment and Other Relief and Counterclaim, in which he asserted that he would show

> that he was granted custody of the parties' minor child, . . . , by Agreed Order dated April 12, 2001, and the Defendant/Counter-Plaintiff furnished the primary support for [the child] while she was a minor. The Defendant/Counter-Plaintiff requests that the [c]ourt award him a judgment against the Counter-Defendant retroactive to the date of the Agreed Order for

31

child support he has provided to the parties' child. The Defendant/Counter-Plaintiff would further request that the [c]ourt award him prejudgment interest on the award of child support.

¶52. On June 29, 2020, the chancellor entered his findings of facts and final judgment. In his final judgment, the chancellor addressed four issues: 1) the modification of periodic alimony, 2) Tim West's obligation to pay life insurance, 3) priority of liens, and 4) whether Debbie West was guilty of committing willful misconduct, bad faith, and fraud upon the court. The chancellor did not make a determination regarding Tim West's retroactive child support claim. As a result, Tim West filed a notice of cross-appeal. He asserts that "[t]he [c]hancellor should be reversed and the issue of child support arrearage plus interest should be remanded to the chancellor for a new trial."

¶53. Debbie West admits that the chancellor did not make a ruling on Tim West's claim for retroactive child support. Despite conceding that the chancellor did not address Tim West's claim, she continues to argue the merits of the retroactive child support claim. She argues also that the chancellor's error here was harmless. She asserts that "[i]f the chancellor had ruled, the only proper ruling would have been that Tim [West] had abandoned the claim."

¶54. In *West II*, this Court had remanded numerous unspecified issues, which included this issue, to be presented anew to the chancellor. *West II*, 88 So. 3d at 747. Both parties admit that the trial court did not address Tim West's claim for retroactive child support. As such, the trial court erred by failing to consider Tim West's argument. *See Dunn v. Dunn*, 695 So. 2d 1152, 1155 (Miss. 1997) ("Where this Court has already decided a specific issue in a case

32

on a prior appeal, the trial court has been found to be in error where, on remand, it has refused to follow this Court's opinion and directions." (citing ***Phillips Petroleum Co. v. Stack***, 246 So. 2d 546, 548 (Miss. 1971))); *see also*, ***Johnson v. Alcorn State Univ.***, 929 So. 2d 398, 407 (Miss. Ct. App. 2006) ("Appellate courts may not rule upon material matters which the trial judge did not have the opportunity to judge." (citing ***Ditto v. Hinds Cnty., Miss.***, 665 So. 2d 878, 880 (Miss. 1995))). We remand this issue for the chancellor to consider Tim West's claim for retroactive child support anew.

¶55.    Also, Debbie West asks this Court that "[i]f there is another remand, as Tim requests, the minor child in question (who is now 32 years old) should be joined as a necessary party." We find that this argument is not properly before us and should be reserved for the chancellor to decide on remand. *See* ***Fitch v. Valentine***, 959 So. 2d 1012, 1021 (Miss. 2007) ("Issues not raised at trial cannot be raised on appeal." (citing ***Southern v. Miss. State Hosp.***, 853 So. 2d 1212, 1214-15 (Miss. 2003))).

## III)    CONSOLIDATED APPEAL: NO. 2022-CA-00147-SCT

¶56.    Initially, Tim West filed a complaint seeking to have the trial court declare that the 2008 judgment, the writs of garnishment, and writs of execution had expired and were null and void in the Circuit Court of the Second Judicial District of Jones County, Mississippi. Ultimately, the parties agreed to transfer the case to the Chancery Court of the First Judicial District of Jones County, Mississippi. Once the case was transferred to chancery court, Tim West filed a motion for summary judgment, arguing that since Debbie West failed to renew the 2008 judgment, it had expired on May 9, 2015. The chancellor granted Tim West's

33

motion for summary judgment, determining that the statute of limitations had expired, thereby rendering the 2008 judgment and the writs of garnishment and writs of execution null and void.

¶57.    On appeal, Debbie West argues that the chancery court lacked jurisdiction, that the statute of limitations was tolled, and that Tim West waived his right to assert his statute of limitations defense.

¶58.    First, "[a]s always, questions of law are reviewed de novo." *Yelverton v. Yelverton*, 26 So. 3d 1053, 1056 (Miss. 2010) (citing *Woodell v. Parker*, 860 So. 2d 781, 785 (Miss. 2003)). Next, the question of whether the chancery court had jurisdiction is a question of law, which requires *de novo* review. *See **In re Guardianship of Z.J.***, 804 So. 2d 1009, 1011 (Miss. 2002) (citing *Burch v. Land Partners, L.P.*, 784 So. 2d 925, 927 (Miss. 2001)). Lastly, "[t]his Court will review a trial court's grant or denial of a motion for summary judgment de novo." *Venture, Inc. v. Harris*, 307 So. 3d 427, 431 (Miss. 2020) (internal quotation marks omitted) (quoting *Double Quick, Inc. v. Moore*, 73 So. 3d 1162, 1165 (Miss. 2011)).[13]

---

[13]This Court has said the following regarding reviewing summary judgment:

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c).

"The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should be entered in his favor. Otherwise, the motion should be denied." *Moore*, 73 So. 3d 1165 (citing *Titus* [*v. Williams*], 844 So. 2d [459,] 464 [(Miss. 2003)]). The party

**A)    Whether the chancery court lacked priority of jurisdiction in this case.**

¶59.   Tim West filed his complaint initially in the Circuit Court of the Second Judicial District of Jones County, Mississippi. The complaint subsequently was transferred to the Chancery Court of the First Judicial District of Jones County, Mississippi, which is the same court that has presided over the other *West* cases.

¶60.   On appeal, Debbie West states that "Tim completely disregarded the fact that *West* was and is still pending, and filed his Complaint in this case seeking declaratory relief that the 2008 Judgment in *West* and Debbie's collection efforts in connection therewith have expired and are null and void." She argues that "[t]he [c]hancery [c]ourt in this case lacked jurisdiction over the 2008 Judgment and Debbie's collection efforts in connection therewith in *West* and lacked jurisdiction to make determinations or declarations concerning the same." She claims that "[a]ny determination or declaration concerning the 2008 Judgment entered in *West* should have been made by the chancellor in *West*."[14] Referencing *West III*, Debbie West asserts that "[t]he rule of priority of jurisdiction requires that Tim's claim for declaratory relief concerning the 2008 Judgment in *West* should be heard in *West* and not in this case because (1) it is undisputed that *West* was filed before this case, (2) Debbie and Tim

---

moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Johnson v. Pace*, 122 So. 3d 66, 68 (Miss. 2013) (citing *Tucker v. Hinds Cnty.*, 558 So. 2d 869, 872 (Miss. 1990)).

*Harris*, 307 So. 3d at 431-32.

[14]It should be noted that the chancellor in this case, Honorable Franklin McKenzie, was the same chancellor who presided initially over *West I*, *West II*, and *West III*.

35

are both parties in *West* and this case, (3) the 2008 Judgment was entered in *West*, and (4)

Tim is now attempting to nullify the 2008 Judgment entered in *West*."

¶61. The Court has said the following regarding priority of jurisdiction:

> This Court "repeatedly" has stated that it is a "'well established rule in this jurisdiction that where two (2) suits between the same parties over the same controversy are brought in courts of concurrent jurisdiction, the court which first acquires jurisdiction retains jurisdiction over the whole controversy *to the exclusion or abatement of the second suit*.'" ***Copiah Med. Assocs. v. Mississippi Baptist Health Sys.***, 898 So. 2d 656, 663 (Miss. 2005) (citations omitted) (emphasis added). Priority of jurisdiction is determined by the date the initial pleading was filed, provided "'process issues in due course.'" ***Id.*** (citations omitted). "['']In order that the rule may be applicable which *prevents interference by another court with the jurisdiction of the court first assuming it*, the second action should be between the same parties, seeking on the one hand, and opposing on the other, the same remedy. . . .'" ***Id.*** (citations omitted) (emphasis added).

> "'It is fundamental that a plaintiff is not authorized simply to ignore a prior action and bring a second, independent action on the same state [sic] of facts while the original action is pending.'" ***Long v. McKinney***, 897 So. 2d 160, 172 (Miss. 2004) (citations omitted). "'Hence a second action based on the same cause will generally be abated where there is a prior action pending in a court of competent jurisdiction within the same state or jurisdictional territory, between the same parties, involving the same or substantially the same subject matter and cause of action, and in which prior action the rights of the parties may be determined and adjudged.'" ***Id.***

***Braswell v. Ergon Oil Purchasing, Inc.***, 179 So. 3d 997, 1002-03 (Miss. 2015). Simply, "[t]he priority-of-jurisdiction rule stands for the premise that if the first court in which the action is filed has proper subject matter jurisdiction, that court should retain jurisdiction over the whole controversy." ***Issaquena Warren Cntys. Land Co., LLC v. Warren Cnty.***, 996 So. 2d 747, 750 (Miss. 2008) (citing ***RAS Fam. Partners v. Onnam Biloxi, LLC***, 968 So. 2d 926, 929 (Miss. 2007)). Tim West asserts that "priority of jurisdiction is inapplicable to cases

filed in the exact same court." We agree, because this Court has said that "[p]riority jurisdiction typically applies when the same lawsuit has been filed in two different courts, not in the same court." *Compere v. St. Dominic Jackson Mem'l Hosp.*, 71 So. 3d 607, 610 (Miss. 2011) (citing *McCleave v. McCleave*, 491 So. 2d 522, 523 (Miss. 1986)). Thus, Debbie West's argument is without merit.

¶62.     We find, however, that Tim West's claim challenging the 2008 judgment, writs of garnishment, and writs of execution is prohibited by Mississippi's law regarding claim splitting.

¶63.     As Tim West indicated in his brief, Debbie West did not explicitly raise claim splitting, but her priority of jurisdiction argument actually was an argument for claim splitting. Tim West asserts that his claim in the instant case does not satisfy the elements of claim splitting because he "is not asserting the same right and relief as the previously filed case, and the relief Tim seeks in this case is not founded upon the same facts as the previously filed case." But it is clear from the facts surrounding these cases that the elements of claim splitting are satisfied.

¶64.     This Court has held that claim splitting "occurs when a plaintiff attempts to bring a duplicative action involving claims arising from a single body of operative facts against the same defendants." *Carpenter v. Kenneth Thompson Builder, Inc.*, 186 So. 3d 820, 824 (Miss. 2014) (citing *Wilner v. White*, 929 So. 2d 315 (Miss. 2006)). Further explaining claim splitting, this Court has said that

> "The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit. By spreading

claims around in multiple lawsuits in other courts or before other judges, parties waste 'scarce judicial resources' and undermine 'the efficient and comprehensive disposition of cases.'" *Katz* [*v. Gerardi*], 655 F.3d [1212,] 1217 [(10th Cir. 2011)] (quoting *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002)). "It is well-settled that a plaintiff may not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed." *Hartsel*, 296 F.3d at 990. "[T]he [United States] Supreme Court captured the general principle regarding claim-splitting:

> When the pendency of a [previously filed] suit is set up to defeat another, the case must be the same. There must be the same parties, or, at least, such as represent the same interest; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the title, or essential basis, of the relief sought must be the same."

*Katz*, 655 F.3d at 1217 (quoting *The Haytian Republic*, 154 U.S. 118, 124, 14 S. Ct. 992, 38 L. Ed. 930 (1894)).

*Carpenter*, 186 So. 3d at 824-25 (alterations in original). In order to conduct a claim splitting analysis, a final judgment is not required; "rather, the test is 'whether the first suit, assuming it were final, would preclude the second suit.[']"[15] *Id.* at 825 (quoting *Katz*, 655 F.3d at 1218-19).

¶65.    Based on the trial court's order in *West III*, *i.e.*, finding that Debbie West only had an interest via the judgment lien and the writs of garnishment, Tim West's attack on the 2008 judgment and the writs of garnishments and writs of execution was a clear attempt to defeat

---

[15]In *Carpenter*, this Court recognized that the United States Court of Appeals for the Tenth Circuit held in *Katz* that, "'[t]he district court did not abuse its discretion by dismissing the [plaintiff] from this case for claim splitting' where '[the plaintiff] filed two cases in the same district court, involving the same subject matter, seeking the same claims for relief against the same defendants.'" *Carpenter*, 186 So. 3d at 825 (alterations in original) (quoting *Katz*, 655 F.3d at 1219).

38

the chancellor's prior ruling and to find a contrary determination. Thus, it is apparent that this suit was filed to defeat *West III*.

¶66. Similarly, we find that Tim West's separate claim and *West III* arose from the same, single body of operative facts and are against the same defendant. *West III* arose from Debbie West's attempt to collect money that was owed to her from a judgment that had been entered against Tim West. Without Debbie West's attempt to collect her judgment by means of garnishment and execution, there would not have been a stock sale, as it was the 2008 judgment, writs of garnishment, and writs of execution that impelled Tim West's sale of his stock back to his companies. Also, at the trial level in *West III*, Tim West asserted a counterclaim against Debbie West. Therefore, both suits involve the same defendant, Debbie West.

¶67. Despite asserting a counterclaim against Debbie West in *West III* on February 12, 2013, Tim West never amended his complaint in 2015, the time he claims the 2008 judgment had expired, to challenge the statute of limitations. Instead, he waited until *West III* was on appeal and filed a separate action in 2020 to challenge the running of the statute of limitations. Also, Tim West had prior knowledge that if he wanted to challenge the 2008 judgment, the writs of garnishment, and the writs of execution, he needed to do so in *West III*, which essentially was a continuation of *West I* and *West II*. Tim West had prior knowledge because he had moved to vacate the 2008 judgment in *West III* on November 12, 2012. We find that this suggests an understanding on his part that if he wanted to challenge

the statute of limitations, the appropriate way of doing so would have been to raise the issue in the appropriate case file, *i.e.*, ***West III***.

¶68. Because this complaint involves impermissible claim splitting, this Court reverses the chancellor's decision and reinstates the 2008 judgment, the writs of garnishments, and the writs of execution because Tim West should not have been allowed to bring this separate complaint.

       **B)**     **Whether the chancellor erred by determining that the statute of limitations had run against Debbie West's 2008 judgment, thereby nullifying and voiding the writs of garnishment and writs of execution issued on it.**

¶69. The chancellor granted Tim West's motion for summary judgment, determining that "the Judgment rendered on May 9, 2008 in favor of [Debbie] West against [Tim] West became expired on May 9, 2015 by operation of the statute of limitations[.]" He ordered also that 1) the 2008 judgment be expunged from the judgment roll, 2) "any writs of garnishment, writs of execution, and charging orders founded and issued on the Judgment . . . are likewise null and void and are hereby terminated as to any property that came into the hands of [Tim] West after May 9, 2015[,]" and 3) Debbie West was "prohibited from collecting any money or property under the May 9, 2008 Judgment that came into the hands of [Tim] West after May 9, 2015."

¶70. Debbie West claims that the chancellor erred by granting summary judgment because there are "genuine issues of material fact in dispute concerning whether or not the 2008 Judgment in West laid dormant for over 10 years[.]" She asserts also that "Tim is not entitled to a judgment as a matter of law on his claims."

¶71. Mississippi Code Section 15-1-43 states that "[a]ll actions founded on any judgment or decree rendered by any court of record in this state, shall be brought within seven (7) years next after the rendition of such judgment or decree, or last renewal of judgment or decree, whichever is later." Miss. Code Ann. § 15-1-43 (Rev. 2019). Likewise, Mississippi Code Section 15-1-47, which is titled "Lien of judgments limited" states that

> A judgment or decree rendered in any court held in this state shall not be a lien on the property of the defendant therein for a longer period than seven years from the rendition thereof, unless an action be brought thereon before the expiration of such time. However, the time during which the execution of a judgment or decree shall be stayed or enjoined by supersedeas, injunction or other process, shall not be computed as any part of the period of seven years.

Miss. Code Ann. § 15-1-47 (Rev. 2019).

¶72. The instant case is almost identical to *Quality Diesel Service v. Tiger Drilling Co.*, 190 So. 3d 860 (Miss. 2016). In *Quality Diesel*, the Court was presented with the issue of "[w]hen a party gets a judgment, timely executes a writ of garnishment, and timely initiates a garnishment proceeding, is that party required to renew the underlying judgment to collect the 'property in the hands of the garnishee belonging to the defendant' at the time the garnishment proceeding was filed, to defeat the running of the statute of limitations?" *Id.* at 861. In that case, the Court determined that

> [i]f an action is brought within seven years from the date the judgment was entered, then—in accordance with the unequivocal language of the statute—the lien on the judgment remains. Quality Diesel brought an action within the seven-year period. So the trial judge erred when he ruled that it "ceases to be a lien on the judgment defendant's property."

*Id.* at 863 (footnoted omitted) (citations omitted). The Court stated that based on the language of the garnishment statute, "[t]he proper inquiry . . . is whether a valid underlying

41

judgment existed at the time the writs of garnishment were served." *Id.* But the Court did recognize that prior case law "merely holds that the garnisher cannot collect any property in the hands of the garnishee *after* the underlying judgment has lapsed." *Id.* at 864 (citing *Anderson-Tully Co. v. Brown*, 383 So. 2d 1389, 1390 (Miss. 1980)). That being said, the Court went on to say that standard did not apply to Quality Diesel's case because "[a]t all relevant times, the underlying judgment was valid[.]" *Id.* Therefore, the Court held that "Quality Diesel was not required to renew its underlying judgment against [the drilling company] for it to maintain its timely filed garnishment proceeding against Tiger Drilling[.]" *Id.*

¶73. Like Quality Diesel, Debbie West timely commenced her garnishment proceeding when the underlying judgment was valid. Additionally, she has been attempting to collect her earnings from this 2008 judgment since asserting the writs of garnishment and writs of execution. But there has been ongoing litigation involving the writs since 2008. This is not a case of a litigant's sleeping on her rights, but one of a litigant actively participating in litigation attempting to capitalize on the 2008 judgment entered against Tim West. We hold that because the 2008 judgment was valid when Debbie West commenced the garnishment proceeding, the statute of limitations was tolled, and she was not required to renew the judgment, meaning a valid judgment lien remains.

### C) Whether Tim West waived his defense of statute of limitations.

¶74. Debbie West argues that Tim West waived his defense that the 2008 judgment was barred by the statute of limitations because he did not timely assert his claim. Specifically,

42

she asserts that since May 2015, "Tim has actively participated in litigation and an appeal concerning the 2008 Judgment in *West* with Debbie without timely or reasonably raising or pursuing the enforcement of any claim or defense concerning the statute of limitations."

¶75.    Tim West argues that "while the statute of limitations is ordinarily a defense that must be affirmatively pursued or else waived, Mississippi law dictates that the seven-year statute of limitations on judgments cannot be waived." We disagree. This Court has held that "[a] statute of limitations is an affirmative defense that can be waived if not raised." ***Parker v. Ross***, 367 So. 3d 151, 156 (Miss. 2023) (citing ***Courtney v. State***, 275 So. 3d 1032, 1038 (Miss. 2019)).

¶76.    Additionally, "[a] defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver." ***Kimball Glassco Residential Ctr., Inc. v. Shanks***, 64 So. 3d 941, 945 (Miss. 2011) (internal quotation marks omitted) (quoting ***MS Credit Ctr., Inc. v. Horton***, 926 So. 2d 167, 180 (Miss. 2006)). Tim West claimed that the statute of limitations ran May 9, 2015. But he actively participated in *West III* for another five years before the chancellor's final judgment was entered. During those five years, he never amended his complaint to assert a statute of limitations defense. He even participated in a hearing on December 10, 2015, and did not raise the issue. Instead, he waited five years, then asserted the defense in a separate lawsuit. Thus, we find that Tim West failed to timely and reasonably raise a statute of limitations defense, thereby waiving it.

## CONCLUSION

¶77. Regarding the direct appeal, this Court reverses the trial court's ruling and remands for a determination of whether each of Tim West's capital stock certificates were noted conspicuously with the bylaws restriction. If so, then the conspicuously noted stock certificate(s) should have priority over Debbie West's valid equitable lien. If the stock certificate fails to conspicuously note the bylaws restriction on the stock certificate, then the 1994 equitable lien has priority over Tim West's stock.

¶78. Neither this Court nor the trial court has addressed whether the penalty in Mississippi Code Section 13-3-129 is applicable in this case. As such, we remand this issue for the chancellor to determine that question.

¶79. As for the cross-appeal, the chancellor erred by failing to address Tim West's retroactive child support claim. Thus, this Court remands this issue for the chancellor to consider his claim anew.

¶80. Regarding the consolidated appeal, *West v. West*, No. 2022-CA-00147-SCT, this Court finds that because Tim West engaged in claim splitting, the chancellor's decision is reversed with orders to dismiss the case and reinstate the 2008 judgment, the writs of garnishment, and the writs of execution.

¶81. **AS TO NO. 2020-CA-01206-SCT ON DIRECT APPEAL: REVERSED AND REMANDED. AS TO NO. 2020-CA-01206-SCT ON CROSS-APPEAL: REVERSED AND REMANDED.**

¶82. **AS TO NO. 2022-CA-00147-SCT: REVERSED AND RENDERED.**

**KING, P.J., COLEMAN, MAXWELL, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. RANDOLPH, C.J., AND BEAM, J., NOT PARTICIPATING.**

44